## LOWE *v.* TAYLOR, sheriff.

No. 10719. MAY 18, 1934.

*T. T. Molnar,* for plaintiff.

*R. A. Patterson, solicitor-general,* and *Hooper & Hooper,* for defendant.

GILBERT, Justice.   Stillman Lowe, on behalf of Tula Mae Lowe, obtained from the Judge of the Southwestern Circuit a writ of habeas corpus directed to W. E. Taylor, sheriff and jailor of Randolph County, the Judge of the Superior Court of Randolph County being at the time absent from his circuit.   The writ was later made returnable before the latter for a hearing on February 9, 1935.   The facts which appear from the record and are not disputed show that on December 29, 1934, Stillman Lowe was arrested on a suspicion of having killed Hillman Lowe, and that on the same day Tula Mae Lowe was taken into custody and confined as a material witness, and that a few days later Mattie Mae Thomas was also confined in jail as a material witness.   It appears that on January 3, 1935, T. T. Molnar, representing that he had been employed as counsel for the accused, called at the jail and asked to be shown a warrant for his arrest.   The warrant had not then been sworn out.   He was permitted to confer with the accused, but not with the witnesses.   After leaving the jail, he stated on the outside that his employment was also to secure the release of the two witnesses.   Thereafter, on the same day, a warrant was sworn out against Stillman Lowe.   Subsequently Molnar made other efforts to confer with the witnesses, and was refused, though the sheriff offered to permit a conference in his presence.   It appears that at the commitment hearing of Stillman Lowe he stated that he had been employed by the mother of the accused to represent the witnesses.   On January 4, 1935, acting upon an unsworn petition by the solicitor-general of the circuit that he had information that unless the two witnesses were placed under bond for their appearance before the grand jury it was possible and probable that they would not be available for use of the State in the prosecution of the case against Stillman Lowe, the Honorable C. W. Worrill, Judge of the Superior Court of Randolph County, passed an order that the sheriff of Randolph County hold and keep confined the said witnesses until bond be given for their appearance at the next term of the court and from term to term until the case of Stillman

Lowe be disposed of, and that the amount of the bond be $1500. On January 5, 1935, a commitment hearing was had before a justice of the peace, and Stillman Lowe was committed under a charge of voluntary manslaughter. No commitment was made as to the two witnesses, and they remained in confinement until the habeas corpus hearing. At such commitment hearing the said T. T. Molnar made a request that he be permitted to confer privately with the two witnesses, and, being refused, cautioned them in open court that they had a right to refuse to answer incriminating questions. Tula Mae Lowe testified that she was near by when the mortal blow was struck by Stillman Lowe, heard it, though she did not witness it, but came from around the house and saw the victim on his knees on the ground, the blood streaming from his head. After being cautioned by Molnar, she gave no further testimony. Upon the hearing of the habeas corpus writ a motion to dismiss the answer of the sheriff, the respondent, reciting that he had held the witness, Tula Mae Lowe, from December 29, 1934, until January 4, 1935, without a warrant, but that from the latter date he had held her by virtue of a legal order passed by the Judge of the Superior Court of Randolph County, was overruled. The petitioner excepted.

The sheriff testified, without objection, that she had stated to him that she did not employ Molnar, did not desire his services, and that Molnar had never told him that he was employed by her; that the reason he put the witnesses in jail was that he had information that the attack by Stillman Lowe upon his brother, Hillman Lowe, who subsequently died from his wounds, was made two or three weeks before the time when he confined the witnesses, and they had kept the matter quiet, and that he was holding them to keep them from the influence of those interested in the accused; that when Tula Mae Lowe was on the witness stand at the commitment hearing, and was asked whether she was present when Stillman Lowe struck his brother, Hillman Lowe, Molnar objected to practically all of the questions, and advised her not to answer, on the ground that her testimony might incriminate her, notwithstanding that he, the sheriff, stated in open court that he was not holding them on any criminal charge. He further testified that Tula Mae Lowe stated in open court at the commitment hearing that she did not know that she was represented, did not want a

lawyer, and that she stated "a while ago" that she had not employed a lawyer. He further testified that the witnesses had not requested a hearing of any kind; that Molnar made no request to have them brought before a magistrate, and that neither of them had requested Molnar to be brought to them; that Molnar made a statement at the commitment hearing of Stillman Lowe that he was not employed by the witnesses, but was employed by the mother of the accused to represent him and the witnesses. He further testified that Tula Mae Lowe swore at the commitment hearing in the presence of Molnar that she heard the blow struck by Stillman Lowe, came from around the house and found Hillman Lowe on his knees on the ground, the blood running from his head, and that she told him, the sheriff, that Stillman Lowe's mother asked her to say that the injury was caused by an automobile accident. It further appears from the record that the witnesses were members of Stillman Lowe's family, and were with him and Hillman Lowe during the period between the assault and the death of the latter. At the conclusion of the evidence the court stated to the witnesses that they might show cause, if any they could, why they should not be further held as material witnesses to appear before the grand jury at the next term of court, with opportunity of giving bond. Molnar requested a conference with the witnesses, which the court refused. He then informed the court that they did not care to make a statement. The court then ordered that the witness, Tula Mae Lowe, be remanded to the county jail of Randolph County upon failure to give the bond previously assessed. The petitioner excepted to the judgment of the court in not striking the answer of the respondent, to the judgment denying his counsel the right to confer with the witness, and to the judgment remanding Tula Mae Lowe to the county jail.

■ The plaintiff assigns error on the refusal of the court to strike the answer of the respondent. The answer set forth that the respondent was holding Tula Mae Lowe as a material witness against Stillman Lowe under a legal order passed by the Judge of the Superior Court of Randolph County. That court is a court of general jurisdiction. No lack of jurisdiction being shown in the answer of the respondent, its jurisdiction to issue the order of confinement must be presumed. The court did not err in overruling the motion.

In determining whether or not the court, after the introduction of evidence, had the power to remand the witness to jail until a named bond be given for her appearance at the next term of court and at succeeding terms until the case of Stillman Lowe be disposed of, it is unnecessary to inquire whether or not the original confinement of the witness was illegal. The Code of 1933, § 24-104, specifies certain general powers of every court, and in subdivision 4 thereof states a power "to control, in furtherance of justice, the conduct of its officers and all other persons connected with a judicial proceeding before it, in every matter appertaining thereto." This is a codification of a right which has inhered in courts from ancient times. Without it the court's effort to function would often be a vain and useless thing. It is essential, however, that the control of persons be exercised in a matter which is before the court. In the present case the record shows that Tula Mae Lowe was being held as a material witness in a case against Stillman Lowe. While he had not been indicted on February 9, 1935, when the hearing was had on the writ of habeas corpus, he had, in a commitment hearing on January 5, 1935, been bound over to the superior court of Randolph County on a charge of voluntary manslaughter. Nothing being shown to the contrary, it must be presumed that the magistrate did his duty and forwarded to that court a transcript of the proceedings before him, in consequence of which the superior court of Randolph County acquired jurisdiction of the prosecution of the charge against Stillman Lowe. When, therefore, the habeas corpus proceeding was being heard, the court had the power to control witnesses connected with the matter of the prosecution of Stillman Lowe, notwithstanding that the magistrate might have confined the witnesses, if he had seen fit, at the time of the commitment hearing. In a habeas-corpus proceeding the duty of the court is not necessarily to discharge one illegally restrained, but to determine whether *at the time of the hearing* the ends of justice require that such person be committed to the proper custody. *Russell* v. *Tatum,* 104 *Ga.* 332; *Simmons* v. *Georgia Iron & Coal Co.,* 117 *Ga.* 305, 318 (43 S. E. 780, 61 L. R. A. 739). See also Reffkin *v.* Mayo, 115 Fla. 214 (155 So. 674). Following several sections of the Code of 1933 as to the disposition of a petitioner in a habeas corpus proceeding, § 50-119 provides: "In all other cases the judge hearing the return shall discharge, remand, or admit the

party to bail or deliver him to the custody of the officer or person entitled thereto, *as the principles of law and justice may require.*" (Italics ours.)   A similar provision is contained in 28 U. S. C. A., § 461, as to the duty of the court in Federal jurisdiction: "The court, or justice, or judge shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require."

In Ong Seen *v.* Burnett, 232 Fed. 850, the expression, "dispose of the party as law and justice require," was construed to mean "not as law and justice required at the time of the arrest, but as law and justice require at the time of the hearing."   Other cases are cited therein.   Similarly, we hold that it is the plain intent of the law of Georgia that upon the hearing of a writ of habeas corpus the investigation is, not as to whether the original confinement was illegal, but whether or not the principles of law and justice require at the time of the hearing that a person be released.   What is the power of the court in this investigation?   In *Crosby* v. *Potts,* 8 *Ga. App.* 463 (69 S. E. 582), Judge Powell, in an able opinion in which both of his associates concurred, dealt with a similar though not the precise question before this court.   He furnishes an interesting exposition of the history of the compulsion of testimony, and after referring to what is now § 24-104 of the Code of 1933, states: "We conclude, therefore, that since the law manifestly intends that the courts shall have adequate power to compel the performance of the respective duties falling on those connected in any wise with the case, it may, where the exigencies so require, cause a witness to be held in custody, and in jail if need be, unless he gives reasonable bail for his appearance at the trial.   The outsider who is a witness, and who in this capacity is ordered to be held in confinement unless he gives bail, often suffers less hardship than the outsider who as a juror is held in confinement for days and even weeks without bail.   It is hardly necessary to say that the imprisoning of a witness to secure his attendance is a harsh remedy—one that should be very sparingly exercised.   No court should ever order a witness to be imprisoned in default of bond, except from grave necessity.   Unless his testimony is material and important and unless there is strong likelihood that if he is not restrained by confinement or bond he will violate the mandates of

the subpœna and flee the limits of the State, the power should not be exercised. This is a matter as to which every court, when it is presented, must exercise a broad, humane discretion, having in view the rights of the citizen and the even higher rights of justice and of the State. . . The burden of showing an abuse of discretion was upon the party attacking the judge's order, and no such showing has been made." The importance of having the testimony of Tula Mae Lowe before the grand jury and at the trial of Stillman Lowe, if indicted, was conclusively shown by the evidence. Whether the exigencies required that she be remanded to jail as a material witness until bail be given was a matter in which the judge had a broad discretion. We can not say that it was abused, and his judgment will not be disturbed.

The third headnote need not be elaborated.

*Judgment affirmed. All the Justices concur.*