S95A0967. IN THE MATTER OF: INQUIRY CONCERNING A
JUDGE NO. 94-70.
(454 SE2d 780)

PER CURIAM.

Following an investigation and formal hearing, the Judicial Qualifications Commission ("JQC") recommended that respondent Judge Linda O'Neal, Chief Magistrate of Peach County, be removed from office. We accept the recommendation.

The JQC received 15 complaints regarding the conduct of Judge O'Neal. The JQC investigated the complaints and issued a Notice of Formal Proceedings, which set forth six separate charges.

The evidence before the Commission showed that O'Neal had won a contested election for the office of Chief Magistrate of Peach County, unseating the incumbent of 16 years. The evidence also showed a pattern of an uncooperative working relationship between O'Neal and the County Board of Commissioners.

The evidence relating to the most serious charges showed that on September 13, 1993, O'Neal issued four separate orders to the sheriff and each of his deputies. Collectively, these orders required the sheriff and his deputies to comply with the provisions of OCGA § 15-10-100 (b), which requires a sheriff to perform the duties of constable if no provision is made for appointment of constables, and OCGA § 15-10-102, which sets forth the powers and duties of constables.[1] O'Neal sent the orders to Deputy Deese at the Sheriff's Department to serve.

---

[1] The statutorily mandated powers and duties of the sheriff in the absence of an appointed constable are to attend regularly all sessions of magistrate court; to pay promptly money collected to the magistrate court; to execute and return all warrants, summonses, executions, and other processes directed to them by the magistrate court; and to perform such other duties as are required by law. OCGA § 15-10-102.

When Deese refused to serve the orders, O'Neal issued an order directing the coroner to serve the orders. The coroner responded by a letter that he was unauthorized to serve the orders. O'Neal then issued a rule nisi to determine whether Deese should be held in civil contempt and a rule nisi for criminal contempt against the coroner. At the civil contempt hearing on September 23, 1994, O'Neal stated she was the plaintiff and called and cross-examined Deese. O'Neal verbally issued the orders to the sheriff's deputies, the majority of whom were in attendance, and stated that Deese was purged of contempt. On September 24, 1994, O'Neal issued an indefinite stay with respect to the coroner's hearing.

Later that same day, at a called meeting, the Board publicly read a letter to O'Neal in which the Board stated,

> We have decided to give you 30 days to see if you can get your act together. If you continue with your present attitude, causing problems and conflict in the county government, we will have no choice but to recind [sic] your salary increase and return you to the original salary granted to you by the previous commissioners.[2]

Relying upon this statement, O'Neal obtained felony warrants from a magistrate from a distant county, two months after this statement was made, against the members of the Board for intimidation of a court officer in violation of OCGA § 16-10-97. O'Neal held the warrants in her office for approximately a week before having them served. The District Attorney of Houston County was appointed special prosecutor and ultimately dismissed the warrants. Following the dismissal, O'Neal issued a lengthy public statement justifying her actions in seeking the warrants and detailing her disputes with the board of commissioners and the sheriff.

The Judicial Qualifications Commission, following a hearing, issued its findings and recommendations. The Commission found that four charges had been proven by clear and convincing evidence,[3] that such conduct constitutes a violation of Canons 1, 2 (A) and (B), 3B (4) and (7), and 3E (1), and recommended that O'Neal be removed from office.

1. Discipline may be imposed only upon a showing by clear and convincing evidence, JQC Rule 7 (e), that the judge engaged in "will-

---

[2] The present Board had given O'Neal a $10,000 increase, after the previous commissioners had reduced O'Neal's salary $20,000 from that given her predecessor.

[3] The JQC found that allegations relating to one charge were arguably within a magistrate's duties and, standing alone, were insufficient to warrant disciplinary action.

ful misconduct in office, or willful and persistent failure to perform the duties of a judge, or habitual intemperance, or conduct prejudicial to the administration of justice which brings the judicial office into disrepute." JQC Rule 4 (b).[4] We interpret "willful misconduct in office" to mean actions taken in bad faith by the judge acting in her judicial capacity. "Conduct prejudicial to the administration of justice" refers to inappropriate actions taken in good faith by the judge acting in her judicial capacity, but which may appear to be unjudicial and harmful to the public's esteem of the judiciary. Prejudicial conduct may also refer to actions taken in bad faith by a judge acting outside her judicial capacity. Whether discipline should be imposed and the severity of discipline must be

> determined through a reasonable and reasoned application of the text [of the Code of Judicial Conduct] and should depend on such factors as the seriousness of the transgression, whether there is a pattern of improper activity, and the effect of the improper activity on others or on the judicial system.

Georgia Code of Judicial Conduct, Preamble (1994). With these principles in mind, we examine the allegations of misconduct.

2. O'Neal's orders of September 13, 1994 directed the sheriff and his deputies to perform the very duties the law imposes. O'Neal contends that the orders address her concern over a lack of courtroom security, delays by the sheriff in serving warrants and in turning over money collected by the sheriff's department. She characterizes the orders as a "remedial form of notice" to make her court officers aware of their responsibilities. She also contends that such orders are authorized by Ga. Const. of 1983, Art. VI, Sec. I, Par. IV and OCGA § 15-1-3 (4), which provides that every court has the power "to control . . . the conduct of its officers."

Paragraph four of OCGA § 15-1-3 is a codification of a power inherent in the courts. *Lowe v. Taylor*, 180 Ga. 654, 658 (180 SE 223) (1935). The inherent power of a court should not be used as a weapon in political power struggles, but it "must be carefully preserved" and "cautiously used." *Grimsley v. Twiggs County*, 249 Ga. 632, 634 (292 SE2d 675) (1982). Reliance upon a court's "inherent power" is inappropriate and unnecessary where specific remedies exist. See *McCorkle v. Judges of Superior Court*, 260 Ga. 315, 316 (392 SE2d 707) (1990) ("inherent power is not a sword but a shield").

---

[4] A judge may also be removed from office if he or she is laboring under a "disability that seriously interferes with the performance of the judge's duties which is or is likely to become permanent." JQC Rule 4 (b). That provision is not involved in this matter.

The appropriate remedy to require the proper performance by an official of a statutorily imposed duty is to seek a writ of mandamus. See *Grimsley*, 249 Ga. at 632 ("[m]andamus is the proper 'remedy to compel a public officer or a county board to perform a duty imposed by law' "), quoting *Mattox v. Bd. of Ed.*, 148 Ga. 577, 581 (97 SE 532) (1918); OCGA § 9-6-20. Although these orders appear to be in the nature of mandamus, a magistrate court does not have the power to issue writs of mandamus, Ga. Const. 1983, Art. VI, Sec. I, Par. IV, nor was the required notice given or hearing held, OCGA § 9-6-27. O'Neal would have certainly been authorized to file a petition for mandamus in the superior court, but she was not authorized to issue an order requiring the performance of an official duty. See *McCorkle*, 260 Ga. at 317, n. 4 (Hunt, J., concurring) (remedy for judges of inferior courts for whom county has failed to appropriate necessary funds for operation of court is limited to mandamus in the superior court). We thus find O'Neal exceeded the authority vested in the magistrate court in issuing orders to require court officers to comply with their statutorily imposed duties.

Additionally, a review of the transcript of the hearing on the rule nisi directed toward Deese demonstrates that O'Neal had become personally embroiled in the matter and, therefore, under *Dowdy v. Palmour*, 251 Ga. 135, 142 (304 SE2d 52) (1983), another judge was required to hold the contempt hearing. See also Canon 3E (1) ("Judges shall disqualify themselves in any proceeding in which their impartiality might reasonably be questioned"). The JQC made the factual finding that O'Neal took these actions in order to intimidate and coerce the sheriff and his deputies. Use of the power of the judicial office to issue orders and to exercise its contempt power in order to intimidate and coerce other elected officials violates Canons 2A, 2B, and 3E (1) and demonstrates wilful misconduct in office.

3. The statement by the Board of Commissioners that it would reduce her salary was contrary to the express language of OCGA § 15-10-23 (b) (no "magistrate's compensation or supplement shall be decreased during any term of office"). However, obtaining *felony warrants* for the entire board based upon a clearly unenforceable threat issued in the midst of a political squabble was not an appropriate or judicious response by O'Neal. See Canon 2A (Judges "shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary"). Following the dismissal of the felony warrants, O'Neal issued to a local paper a written public statement in which she detailed the circumstances leading up to her seeking the felony warrants. The statement appears to be an attempt to influence public opinion in her favor and against other Peach County officials, including the sheriff and board of commissioners. Such conduct violates Canons 1, 2A, 2B, and 3B (4) and is prejudicial to the

administration of justice and undermines public confidence in the impartial functioning of judicial officers.

4. O'Neal refused to acknowledge that any specific action was improper; nor did O'Neal accept personal responsibility for the difficulties she experienced with the other elected officials of Peach County. We take this refusal into account in determining that O'Neal's acts of wilful misconduct and prejudicial conduct demonstrate she is presently unfit to hold judicial office.[5] Therefore, we order that Judge Linda O'Neal, Chief Magistrate of Peach County, be removed from office.

*Removed from office. All the Justices concur, except Hunt, C. J., not participating and Benham, P. J., who concurs in part and dissents in part.*

BENHAM, Presiding Justice, dissenting.

While I agree with Divisions 1 and 2 of this court's opinion, I cannot agree with Divisions 3 and 4; therefore, I must respectfully dissent.

The drastic action of removing a judge from office is one that should be taken with great caution and concern. When a judge has been elected by the people, removal from office is tantamount to impeachment; therefore, the violations of the Code of Judicial Conduct should be proved by "clear and convincing" evidence. Divisions 1 and 2 of the majority opinion clearly show a violation of the Code of Judicial Conduct, and I concur in those determinations. However, my concurrence dissolves when we reach Divisions 3 and 4 of the majority opinion. In Division 3, the majority states:

> The statement [an account by the judge in the local newspaper of what transpired and her motivations for taking the actions she took] appears to be an attempt to influence public opinion in her favor and against other Peach County officials, including the sheriff and board of commissioners. Such conduct violates Canons 1, 2A, 2B, and 3B (4) and is prejudicial to the administration of justice and undermines public confidence in the impartial functioning of judicial officers.

Judges do not lose their right to freedom of expression when they take the bench. In fact, public officials — including judges — are oftentimes called upon to explain their conduct in public fora. Our democratic society is based on a free flow of information and ideas

---

[5] After a review of the entire record, we find that the remaining charges have not been proven by clear and convincing evidence or that they are cumulative; therefore, they form no independent basis for our decision.

and we have jealously guarded this right for as long as the republic has existed. Donning a robe does not strip a judge of freedom of expression.

The majority opinion does not state how the statement by the judge in the local paper violated the Code of Judicial Conduct or undermined public confidence in the office. Judges are accountable to the public and they should not be unduly punished for explaining their actions to the public. In the absence of a showing that the statement by the judge violated a specific provision of the Code of Judicial Conduct, I must disagree with the majority's determination as to Division 3.

In Division 4 of its opinion, the majority apparently finds evidence of aggravation and states:

> O'Neal refused to acknowledge that any specific action was improper; nor did O'Neal accept personal responsibility for the difficulties she experienced with the other elected officials of Peach County. We take this refusal into account in determining that O'Neal's acts of wilful misconduct and prejudicial conduct demonstrate she is presently unfit to hold judicial office.

This statement is a slim reed indeed upon which removal from office is justified. We must keep in mind that, while the actions taken by the judge were unauthorized, she sought to have done nothing more than was provided for under law.[6] Therefore, I disagree with the majority's determination in Division 4 that refusal to admit fault is justification for removal from office.

The decision of the court follows the recommendation of the Judicial Qualifications Commission; however, noticeably absent — though I recognize it is not required by the rules governing the JQC — is a finding by the JQC as to why some lesser punishment is not applicable. In the five years I have served on the Supreme Court of Georgia, this court has never seen fit to remove a judge from office. Instead of ordering this judge from office, I would remand the case to the JQC for a finding as to why lesser punishment is not appropriate.

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 30, 1995.

*Earle B. May, Jr.*, for Judicial Qualifications Commission.

---

[6] The judge sought to have the sheriff attend sessions of court and to prevent the Board of Commissioners from reducing her statutorily-mandated salary.

*Pete C. Whitlock, Bruce S. Harvey,* for O'Neal.