S96A0107. IN THE MATTER OF: INQUIRY CONCERNING
A JUDGE
NOS. 94-8, 94-64, 94-74, 95-44, 95-56.
(462 SE2d 728)

PER CURIAM.

In this matter, we must consider the recommendation of the Judicial Qualifications Commission ("the Commission") that Judge Dorothy J. Vaughn of the State Court of Fulton County be removed from office for reasons related to her judicial conduct. An inquiry regarding Judge Vaughn's fitness to sit as a judge was initiated by the filing of a formal complaint with the Commission alleging that Judge Vaughn had violated Canons One, Two and Three of the Code of Judicial Conduct during the trial of a medical malpractice case,[1] and four ad-

---

[1] Canon One of the Georgia Code of Judicial Conduct states that "Judges shall uphold the integrity and independence of the judiciary." The commentary notes that judges must comply with the law and the Code in order to foster public confidence in the judiciary, and because the "violation of [the] Code diminishes public confidence in the judiciary and thereby does injury to the system of government under law."

Canon Two of the Code states that "Judges shall avoid impropriety and the appearance of impropriety in all their activities." This canon, too, emphasizes that judges must comply with the law, and conduct themselves "in a manner that promotes public confidence in the integrity and impartiality of the judiciary." Canon Two notes that this public confidence is "eroded by [the] irresponsible or improper conduct of judges."

Canon Three of the Code requires that "Judges shall perform the duties of judicial office impartially and with dignity." Subsection "B" of Canon Three requires that judges hear and decide matters assigned to them; that they be faithful to the law and maintain professional competence therein; and that they be patient, dignified, and courteous to litigants, jurors,

ditional complaints alleging, inter alia, judicial misconduct which resulted in the denial of the constitutional rights of criminal defendants. On December 12, 1994, notice was issued that formal proceedings would be initiated by the Commission in order to determine whether Judge Vaughn had engaged in "willful misconduct in office . . . or conduct prejudicial to the administration of justice which brings the judicial office into disrepute."[2]

Following a long hearing at which voluminous testimony was given, the Commission determined that the allegations set forth in the notice were proved by clear and convincing evidence. Based upon that determination, and because it found that Judge Vaughn did not indicate a desire or willingness to alter the conduct that was the gravamen of the allegations against her, the Commission recommended that she be removed from office as unfit to sit as a judge.

In fairness to Judge Vaughn, we note at the outset that there are no allegations against her of moral turpitude or judicial corruption, nor are there any charges of personal dishonesty or conflict.[3] However, because our review of the record leaves us no alternative but to conclude that Judge Vaughn has engaged in conduct that has, inter alia, (1) prejudiced the administration of justice, (2) harmed the public's perception of the judiciary, and (3) demonstrated a propensity toward wilful misconduct and bad faith as a judge, it is our duty to order that Judge Vaughn be removed from office.[4]

---

witnesses, lawyers, and others with whom they deal in their judicial capacity.

[2] "Willful misconduct in office" has been defined by this Court "to mean actions taken in bad faith by the judge acting in her judicial capacity." *In the Matter of: Inquiry Concerning A Judge No. 94-70*, 265 Ga. 326, 328 (454 SE2d 780) (1995). "Conduct prejudicial to the administration of justice" has been defined as "refer[ring] to inappropriate actions taken in good faith by the judge acting in her judicial capacity, but which may appear to be unjudicial and harmful to the public's esteem of the judiciary." Id.

[3] The notice alleged that Judge Vaughn had: (I) acted in an "undignified, arrogant, intemperate, rude and/or discourteous manner toward litigants, attorneys, and others appearing in [her] court, specifically including, but not limited to" [ten listed cases]; (II) "misused and/or abused the powers of [her] office by engaging in a pattern of hostile conduct toward litigants, lawyers and others . . . and, in so doing, demonstrated a serious lack of judicial temperament, . . . specifically including, but not limited to [named individuals]"; (III) "used [her] position to make unfounded and improper allegations of misconduct and unfair criticisms of certain support personnel assigned to [her] office, specifically including, but not limited to [named individuals]"; (IV) failed to "fairly, promptly and efficiently dispose of the business of the court" by tardiness, absences, trial interruptions, and refusal to communicate timely; (V) been unfaithful to the law and demonstrated professional incompetence in the handling of matters coming before her court, specifically including, but not limited to certain listed matters. Additionally, the notice advised Judge Vaughn that the Commission would seek to determine whether such conduct; (VI) "constitutes irresponsible or improper activity which adversely affects the administration of your office, as well as the rights and interests of the public"; (VII) "has resulted in the filing of numerous complaints with this Commission"; and (VIII) "constitutes a violation of the Code of Judicial Conduct, and Canons 1, 2, and 3 thereof in particular . . . ."

[4] "Any judge may be removed, suspended, or otherwise disciplined for willful miscon-

1. It is the function of this Court to review the findings of the Commission, and to exercise its judgment based upon the entire record to make a determination whether Judge Vaughn's conduct warrants discipline, and, if so, what sanctions should be imposed. In performing this independent function, we give substantial consideration and due deference to the Commission's ability to evaluate the credibility of the witnesses who appear before it. In reaching our determination, this Court employs the same "clear and convincing proof" standard utilized by the Commission in making its recommendation. With this in mind, we first consider the grounds asserted by Judge Vaughn in support of her petition urging us to reject the Commission's recommendation that she be removed from the bench, after which we explain the basis of our decision to remove her from office.

2. Judge Vaughn argues that the Commission erred by receiving evidence in this matter prior to a determination of her motion to recuse.[5] In that motion, Judge Vaughn had alleged that the remarks of Commission counsel, Althea Buafo, evidenced an appearance of the Commission's pre-judgment against the Judge. Judge Vaughn supported that allegation in her motion with the affidavits of her former and current counsel. The motion to recuse was denied by Presiding Judge Lawson, on behalf of the Commission, on the grounds that (1) it was untimely, (2) Judge Vaughn had waived her right to move for recusal by proceeding on the merits, and (3) the affidavits were legally insufficient.

We affirm the Commission's denial of the motion to recuse. Judge Vaughn had knowledge of the matters set forth in the affidavits at least sixty days before the motion was first filed, which was four days prior to the commencement of formal hearings.[6] Likewise, Judge Vaughn had already submitted numerous filings with the Commission, none of which indicated that they were filed subject to her right to move for the Commission's recusal. Moreover, the matters discussed in the affidavits do not support a finding of the appearance of pre-judgment or impartiality. Instead, those matters, as well as the record before us, reveal that the Commission was engaged in negotiations with Judge Vaughn under the provisions of Rule 4 (d) of the

---

duct in office . . . or for conduct prejudicial to the administration of justice which brings the judicial office into disrepute." Ga. Const. 1983, Art. VI, Sec. VII, Par. VII.

[5] Among the other grounds she alleges, Judge Vaughn contends that the Rules of the Judicial Qualifications Commission ("the Rules") were not pre-cleared as required by federal law. This contention was never raised before the Commission, and is not argued in Judge Vaughn's petition. Accordingly, this ground was abandoned under Supreme Court Rule 22.

[6] Judge Vaughn first filed an "extraordinary motion" with this Court seeking recusal of the Commission and a stay of its proceedings. That motion was denied without prejudice to Judge Vaughn's right to file the motion with the Commission, which she did at the outset of the hearing. Regarding the timeliness of Judge Vaughn's motion, see e.g., *Smith v. State*, 192 Ga. App. 18 (1) (383 SE2d 600) (1989); Uniform Superior Court Rule 25.1.

Rules.

Further, we disagree with Judge Vaughn's contention that the inherent unfairness of the tribunal, or at least the proscribed possibility thereof, as evidenced by the Commission's allegedly adversarial comments on the record, deprived her of her right to a fair adjudication of the allegations against her. It is well-established that the exercise of the combination investigative and adjudicative functions of an agency does not, per se, violate the requirements of due process. *Withrow v. Larkin*, 421 U. S. 35 (95 SC 1456, 43 LE2d 712) (1975). We note that other States with judicial disciplinary proceedings similar to Georgia's also have rejected this due process argument.[7]

While the Commission is authorized to investigate complaints, hear evidence, find facts and make recommendations with respect thereto, its recommendations are not binding upon this Court. Rather, it is this Court's duty to review the record, exercise its judgment as to whether the facts found by the Commission are proved by clear and convincing evidence, and determine whether the Commission's recommendation should be followed. Thus, even if we were to find evidence of any partiality on the part of the Commission, which we do not, it would be "cured by the final scrutiny of this adjudicative body." *In re Brown*, 512 SW2d 317, 321 (4) (Tex. 1974).

3. Judge Vaughn next contends that the erroneous admission of expert testimony by Judge Charles Carnes, Chief Judge of the State Court of Fulton County, compels the rejection of the Commission's recommendation. Judge Vaughn does not challenge the qualification of Judge Carnes to testify as an expert witness in these proceedings, only the propriety of the Commission hearing that testimony and relying thereon. We do not agree with Judge Vaughn that the constitutional delegation to the Commission, through this Court, of the power and duty to conduct these proceedings is compromised by the testimony of a member of the judiciary who is qualified to offer an opinion regarding whether specific judicial conduct comports with that exacted by the Code, and corresponds with that expected of a judge sitting on the State Court of Fulton County.

4. Georgia's state courts, created pursuant to OCGA § 15-7-2, exercise comprehensive jurisdiction over a wide range of claims, including, inter alia, landlord/tenant disputes, misdemeanor offenses (including driving under the influence), contract and tort cases, and

---

[7] See *In re Graham*, 620 S2d 1273 (4) (Fla. 1993); *Matter of Deming*, 736 P2d 639 (15) (Wash. 1987); *In re Nowell*, 237 SE2d 246 (10-11) (N.C. 1977); *In re Brown*, 512 SW2d 317 (4) (Tex. 1974); *In re Kelly*, 238 S2d 565 (10) (Fla. 1970). We also find that the Commission's defense of itself against Judge Vaughn's legally insufficient motion to recuse does not evidence partiality against Judge Vaughn. See, e.g., *Isaacs v. State*, 257 Ga. 126 (355 SE2d 644) (1987).

cases involving real property and small claims, but excluding only felony criminal cases, certain domestic cases, equity matters, and land title cases. See OCGA §§ 15-7-4; 15-6-8. The expansive jurisdiction of our state courts is reflected in the number of cases that are filed there each year by the citizens of this state. For example, in 1993, the total number of misdemeanor, traffic and civil cases filed in the State Court of Fulton County alone was 136,206. There are only eight judges assigned to dispose of these cases.

Handling these cases in the state courts is an important, often monumental, task. The impact of the state courts on the daily lives of Georgia citizens is as great, if not greater, than our appellate courts. State courts, are, more than most other courts, truly the "people's courts," and a prime example of the inaccuracy of the misnomer "lower court." It is true that many of the matters adjudicated in our state courts do not concern the complex issues that today tend to dominate media headlines. However, the matters dealt with in all of our state courts on a daily basis carry great significance for the litigants involved, and result in consequences that are serious, often dire, to those litigants.

Because it is situated in the most populous region of our state, many Georgia citizens have occasion to be in the State Court of Fulton County, either as litigants, witnesses, jurors, spectators or counsel. For many of these individuals, their initial, possibly only, contact of any serious nature with our judicial system occurs in the State Court of Fulton County. These individuals' experiences may constitute the sole basis for their personal impression of our judicial system, and for their respect, or lack thereof, for the judiciary of this state.

It is, therefore, obvious that our courts require honest, talented, and competent judges. Nowhere is the community more sensitive to the regularities, or irregularities, of judicial conduct than at the local level. In state courts, the entire fabric of trial procedure, including dealing with unprepared, unrepresented, and inexperienced litigants, is in the hands of the state court judge. The state court judge plays a crucial role in achieving even-handed and just results, particularly because litigants of widely disparate backgrounds, resources and abilities are involved. State court judges represent one of the first bastions of our judicial system, and, to thousands of the State's litigants, *are* the judicial system.

We cannot permit our citizens' experiences with our judges to leave them with any impression other than one of confidence and respect. It is therefore of utmost importance that this Court diligently adhere to its responsibility to regulate the conduct of judges, and thereby to protect both the public and the judicial system. See *Judicial Qualifications Comm. v. Lowenstein*, 252 Ga. 432 (1) (314 SE2d

107) (1984).[8] In carrying out this duty, we are fully aware that the object of proceedings such as this one "is not to punish the individual [judge,] but to maintain the honor and dignity of the judiciary and the proper administration of justice." *In re Nowell*, 237 SE2d 246, 250 (N.C. 1977). Although very serious, the removal of a judge is not designed to punish the individual, but rather is the legal consequence of judicial misconduct or unfitness. *Nowell*, supra at 251. The gravity of the proceeding requires that it be fundamentally fair and in keeping with the basic requirements of due process. Ga Const. 1983, Art. VI, Sec. VII, Par. VIII.

5. In considering the Commission's recommendation that Judge Vaughn be removed from office, it is unnecessary for us to examine all of the findings that the Commission relied upon. Moreover, we believe that some of those findings, standing alone, would not support the Commission's recommendation. In this regard, we note that it is beyond the human capacity of some of our finest judges not to exhibit occasional intemperance.

However, as explained below, the record in this matter establishes much more troubling behavior on Judge Vaughn's part than intemperate and discourteous conduct, which is itself a violation of Canon Three of the Code. Numerous incidents in the record prove by clear and convincing evidence that Judge Vaughn has engaged in conduct that has (1) violated her duties under Canons One, Two, and Three of the Code, (2) denied criminal misdemeanor defendants the most obvious and basic of their constitutional rights, (3) prejudiced the administration of justice to individuals appearing in her courtroom, (4) brought disrepute upon the judicial office, (5) eroded public confidence in that office, and (6) evidenced a propensity toward judicial misconduct and bad faith. Because these instances of misconduct, considered in their totality and standing alone, lead us to conclude that Judge Vaughn is unfit to hold the office of judge, they are the only allegations that we will address.

First, we find that in two cases, *State v. Park* and *State v. Tarkenton*, Judge Vaughn denied appeal bonds to criminal misdemeanor defendants, each of whom was entitled, *as a matter of law*, to be granted appeal bonds. See OCGA § 17-6-1 (b). In the *Park* matter, upon Park's conviction and sentencing, defense counsel immediately filed a notice of appeal in open court, and requested that an appeal bond be set. Rather than responding to that motion, Judge Vaughn

---

[8] Our duty to regulate the fitness of the judiciary stems in part from the fact that there are few other controls on the conduct of a judge. For example, even though society has endowed its judges with awesome power, judges are relieved from any personal responsibility for negligence, malpractice, or even gross dereliction of duty by virtue of sovereign immunity. See Ga. Const. 1983, Art. I, Sec. II, Par. IX.

left the courtroom, not to return, and Park was incarcerated. Three days later, after Judge Vaughn's persistent refusal to hear defense counsel on the request for bond, counsel obtained an emergency order from the Court of Appeals directing Judge Vaughn immediately to set a reasonable appeal bond, which order was promptly delivered to Judge Vaughn's chambers. Late in the afternoon of the following day, after finally hearing defense counsel on the motion for bond, Judge Vaughn asked counsel for authority regarding the period of time within which she was required to comply with the Court of Appeals' emergency order. It was only after counsel informed Judge Vaughn that the law prohibits the denial of an appeal bond to a defendant convicted of a misdemeanor that a $2,000 bond was finally set. As a result of Judge Vaughn's failure to comply with the law and set an appeal bond in this case, Park, a misdemeanor defendant, was illegally incarcerated for four days.

Similarly, in *Tarkenton*, Judge Vaughn left the bench after sentencing without permitting defense counsel to be heard on a request for an appeal bond. Judge Vaughn only agreed to set an appeal bond two days later, after defense counsel obtained an emergency order from the Court of Appeals directing her to do so. As a result of Judge Vaughn's refusal to set bond, Tarkenton was illegally incarcerated for over two days. Incredibly, the Court of Appeals' emergency order directing that bond be set in the *Tarkenton* case followed its emergency order in the *Park* case by only *two days*. The failure to honor these two defendants' rights to an appeal bond is clear and convincing evidence of extreme judicial incompetence in the law.[9] Moreover, it also establishes blatant disregard for the law, and as such, judicial misconduct and bad faith. See *In the Matter of: Inquiry Concerning a Judge No. 94-70*, 265 Ga. 326, 328 (454 SE2d 780) (1995).

In *State v. Reeder* and *State v. Adams*, Judge Vaughn disregarded both the Fourteenth Amendment's guarantee of due process, and the Fourth Amendment's guarantee of freedom from warrants not issued on probable cause. In both of these cases, the defendants appeared in Judge Vaughn's courtroom for separate calendar calls without their respective counsel, who had conflicts. When Reeder's counsel failed to respond to the third call of his case, Vaughn advised Reeder that his bond was forfeited, and directed him to sit in the jury

---

[9] If Judge Vaughn was unaware of the legal requirement that appeal bond be set at the time she denied bond in *Park* (which is extremely doubtful given how often a state court judge must employ this basic tenet of the law), then she had an affirmative duty to educate herself on that law, either acting sua sponte or with the assistance of counsel, before illegally denying bond to Park. A failure to inform herself of that law would constitute judicial incompetence. Because the Court of Appeals' emergency order in *Park* was issued before Judge Vaughn denied bond in *Tarkenton*, it is clear that she was fully informed of this law at the time bond was not set in *Tarkenton*, but nonetheless did not follow it.

box for the rest of the day. Given no instruction to the contrary, Reeder and his counsel left the courtroom at the end of that day. Reeder was subsequently arrested on a bench warrant issued by Judge Vaughn for his failure to appear in court, even though Reeder had been present in court the entire day.

In the *Adams* matter, the calendar clerk announced in open court that Adams' attorney had a conflict and would be slightly late. When Adams' attorney arrived in court 20 minutes later, his client was present, and he attempted to make his presence known to the court. Judge Vaughn refused to recognize Adams' attorney other than to tell him to remain seated, and instead began to strike a jury for the trial of a separate case. When he learned later that day that that particular trial had ended in a mistrial, Adams' attorney, out of an abundance of caution, filed a motion to set aside any bond forfeiture which might issue from Judge Vaughn. Despite the filing of this motion, Judge Vaughn issued a bench warrant for Adams' arrest for his failure to appear. The deputy sheriff desisted in his attempt to arrest Adams only when shown a copy of the motion, which had not been ruled upon.

The last, but far from the least troubling, instance of Judge Vaughn's conduct occurred in *Williams v. State*. Williams, a misdemeanor defendant, appeared in court without his counsel, who had a calendar conflict. Despite knowing that Williams' counsel was absent, and in disregard of the Sixth Amendment's guarantee of counsel, Judge Vaughn demanded in open court that Williams enter a plea to the charges against him. Hesitantly answering that he "guessed" he should plead guilty, Williams was ordered to sign verdict and waiver forms. Upon her arrival in the courtroom moments later, Williams' counsel was directed to put her client's cases on the plea calendar, or else forfeit bond.[10]

We find that Judge Vaughn engaged in conduct extremely prejudicial to the administration of justice when she (1) refused to set appeal bonds for Park and Tarkenton when the law clearly obligated her to do so, (2) issued bench warrants for the arrests of Reeder and Adams without probable cause for such issuance, and (3) forced Williams to enter a plea of guilty in the absence of his counsel. Moreover, Judge Vaughn acted improperly and irresponsibly when she illegally denied (1) Park's, Tarkenton's, and Reeder's liberty without due process of the law, (2) Reeder and Adam's Fourth Amendment rights to be free from warrants not issued upon probable cause, and (3) Williams' Sixth Amendment right to counsel. Judge Vaughn's cavalier

---

[10] Williams' counsel subsequently prevailed upon Judge Vaughn's calendar clerk to reset her client's plea with other special pleas, and to see that Williams' bond would not be forfeited.

disregard of these defendants' basic and fundamental constitutional rights exhibits an intolerable degree of judicial incompetence, and a failure to comprehend and safeguard the very basis of our constitutional structure. Further, we find that these instances of Judge Vaughn's conduct have brought disrepute upon the judicial office, and served to diminish public confidence in that office, in violation of Canons One, Two, and Three of the Code. Finally, we find that Judge Vaughn's open reluctance to comply with the Court of Appeals' emergency orders in *Park* and *Tarkenton* is evidence of a propensity toward judicial misconduct and bad faith which cannot be countenanced.

Judge Vaughn contends that the allegations against her focus upon the exercise of her discretion as a trial court judge, and her personal style, and that such matters are inappropriate for and not worthy of review by the Commission or this Court. We acknowledge that an inquiry of this nature is not and cannot be directed to the idiosyncratic style of a judge, such as the manner in which she handles her courtroom. However, as discussed above, Judge Vaughn has not made mere decisional or judgmental errors, nor has she simply mistakenly interpreted statutes, or erred as to the scope of her discretionary powers. Rather, the record clearly and convincingly establishes that Judge Vaughn has violated the Code of Judicial Conduct, acted in disregard for the administration of justice, eroded public confidence in the judiciary, injured the system of government under law, and demonstrated judicial incompetence and a propensity for misconduct and bad faith. This Court "cannot allow the integrity of the judicial process to be compromised in any way . . . . A community without certainty in the true administration of justice is a community without justice." *In re Yengo*, 371 A2d 41, 47 (N.J. 1977). Accordingly, for the reasons discussed above, we find that Judge Vaughn is unfit to hold the office of judge in the State of Georgia.

6. Having concluded that Judge Vaughn is unfit to hold the office of judge, we must now determine whether to follow the Commission's recommendation that she be removed from office.[11] We find that Judge Vaughn's judicial conduct has strayed too far from the acceptable to warrant only the issuance of a reprimand, along with instructions to modify her judicial conduct in the future. Furthermore, Judge Vaughn has brought forth little, if any, proof of mitigating circumstances to explain her conduct, such as inexperience on the

---

[11] We note that the recommendation of the Commission is only that; "the term 'recommend' manifests an intent to leave the court unfettered in its adjudication." *In re Brown*, supra at 320 (citing *Geiler v. Comm. on Judicial Qualifications*, 515 P2d 1 (Cal. 1973)). It is for this Court to determine, ultimately, the appropriate actions to take in response to the established conduct of Judge Vaughn.

bench, illness, incapacity, or a concerted effort by others to undermine her authority. Moreover, from her own testimony, we find it unlikely that, were she to stay on the bench, Judge Vaughn would alter her previous conduct.[12] Accordingly, we believe that were we to allow Judge Vaughn to remain on the bench, state court litigants would continue to suffer harm, and we would be neglectful of our duty to protect the citizens of this state who have business before the State Court of Fulton County. See p. 847, supra.[13]

Therefore, we conclude that Judge Vaughn must be removed from office. Although this decision is regrettable, it is nonetheless necessary and appropriate. Those who are called upon to live the life of a judge must act with dignity and respect toward others, and must assume full responsibility for their actions. The judges who sit in our communities are entrusted with the duty to safeguard the fundamental rights of others. When, as here, it is established by clear and convincing evidence that an individual is not competent to sit as a judge because she has breached that sacred trust, the same great authority that established those fundamental rights commands us to protect the citizenry and the judicial system from harm, and remove that individual. There is no place in the judiciary for one who will not take equal pains with each and every case and litigant, no matter how small or humble, to ensure that they are guaranteed the same fundamental rights as the greatest and mightiest in our State.

7. In sum, because we find by clear and convincing evidence that her professional conduct has prejudiced the administration of justice, harmed the public's perception of the judiciary, demonstrated a propensity toward wilful misconduct and bad faith, violated her obligations under the Code of Judicial Conduct, and established her incompetency to sit as a judge, it is hereby ordered that Judge Dorothy J. Vaughn of the State Court of Fulton County be removed from office

---

[12] "A judge who [cannot] recognize his own transgressions does not deserve the authority or command the respect necessary to judge the transgressions of others." *In re Graham*, 620 S2d 1273, 1276 (Fla. 1993); see also *In the Matter of: Inquiry Concerning a Judge No. 94-70*, 265 Ga. 326 (4), supra.

[13] Moreover, were we merely to suspend Judge Vaughn from office, the State Court of Fulton County would be prejudiced, and we would fall short in performing our duty to protect the judicial system. If Judge Vaughn was suspended, rather than removed, the resulting vacancy on the Fulton County State Court bench could not be filled with a full-time, experienced judge until the next election. See Ga. Const. 1983, Art. VI, Sec. VII, Par. I. In that event, that already over-burdened court would be forced to handle more cases with fewer experienced, permanent judges, resulting in prejudice to both the judicial system and the litigants appearing in state court. It is of course possible that part-time magistrates could fill part of the vacancy until a full-time judge could be elected, see id. Par. III, but we believe that that would be a terrible misuse of taxpayer dollars. However, this does not mean that if Judge Vaughn's conduct warranted only that she be suspended from office, the resulting burden on the Fulton County State Court would authorize her removal.

instanter.[14]

*Removed from office. All the Justices concur.*

DECIDED OCTOBER 16, 1995 —
RECONSIDERATION DENIED NOVEMBER 9, 1995.

*Earle B. May, Jr., Althea L. Buafo,* for Judicial Qualifications
Commission.
*Tony L. Axam, Thomas E. Cauthorn III,* for Vaughn.

---

[14] A motion for reconsideration may be filed within ten days of the date of this opinion, consistent with the Rules of this Court, and, if filed, will be fully considered and ruled upon. However, our ruling that Judge Vaughn is removed from office instanter shall be effective as of the date of this opinion, and shall remain effective in the absence of any further order of this Court.