## S10Z1144. INQUIRY CONCERNING JUDGE KENNETH E. FOWLER.

### (696 SE2d 644)

PER CURIAM.

Following an investigation into the alleged judicial misconduct of Twiggs County Probate Court Judge Kenneth E. Fowler, on June 11, 2009, the Judicial Qualifications Commission (JQC) filed formal charges in this Court to have Judge Fowler permanently removed from his position as a judge and barred from ever holding or seeking elected or appointed judicial office in the State of Georgia. Having reviewed the record of the JQC's inquiry, and for the reasons that follow, we agree with the recommendation of the JQC, and order that Judge Fowler be immediately and permanently removed from the bench and be barred from ever holding or seeking elected or appointed judicial office in Georgia.

The record reveals that, after receiving several complaints about the alleged misconduct of Judge Fowler in the fall of 2008, the JQC launched an investigation. The investigation led to the JQC's assertion of twenty separate allegations of judicial misconduct against Judge Fowler, and led to the filing of the formal charges at issue here.

A hearing was held before the JQC on the charges against Judge Fowler on January 28-29, 2010, and the JQC found, among other

things, that Judge Fowler had: (1) violated Canons 1[1] and 2[2] of the Code of Judicial Conduct, and OCGA § 16-1-5,[3] by improperly stating on a routine basis to criminal defendants in the Twiggs County Probate Court that the defendants themselves had the burden of proving their innocence;[4] (2) violated Canons 1 and 2 of the Code of Judicial Conduct, and OCGA § 40-13-26,[5] by allowing criminal defendants to "buy out" the community service portions of their criminal sentences, and then placing the proceeds from such "buy outs" into a bank account from which Judge Fowler would authorize the release of funds via court orders signed by him;[6] (3) failed to disclose to Twiggs County the existence of the bank account being used to store and disperse monies from criminal defendants who had "bought out" their community service sentences and failed to either turn over or provide the monies that were collected from the unauthorized "fees" to the governing authority of Twiggs County; (4) violated Canons 2 and 3[7] of the Code of Judicial Conduct by abusing and insulting parties appearing in probate court;[8] (5) violated Canon 3 (B) (7)[9] of the Code of Judicial Conduct by routinely

---

[1] "Canon 1. Judges shall uphold the integrity and independence of the judiciary."

[2] "Canon 2. Judges shall avoid impropriety and the appearance of impropriety in all their activities." Canon 2 (A) specifically provides that "Judges shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary."

[3] The statute states: "Every person is presumed innocent until proved guilty. No person shall be convicted of a crime unless each element of such crime is proved beyond a reasonable doubt."

[4] Judge Fowler admitted at the hearing that he had improperly shifted the burden of proof to defendants by stating that they had to prove their innocence.

[5] This statute details "[h]ow sentences for traffic offenses [are to be] served."

[6] The record reveals that Judge Fowler collected tens of thousands of dollars for deposit into the unauthorized bank account, and signed court orders authorizing the release of thousands of dollars for items such as bus tickets, school trophies, and police equipment.

[7] "Canon 3. Judges shall perform the duties of judicial office impartially and diligently." Canon 3 (B) (4) specifically provides that "Judges shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom they deal in their official capacity, and shall require similar conduct of lawyers, and of staff, court officials, and others subject to their direction and control."

[8] Judge Fowler routinely used rude, abusive, and insulting language towards parties appearing in Probate Court, often loudly arguing with defendants and witnesses, and even screaming at a defendant to "shut up." The JQC also found that on March 19, 2008, Judge Fowler insinuated during court that a female defendant had provided sexual favors to a Georgia law enforcement officer who had stopped her for a traffic violation. The female defendant testified that Judge Fowler rudely questioned her, stating that "You [the female defendant] must have really turned it on. You must be something good. You must have really showed [the officer] a good time."

[9] Judges shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. Judges shall not initiate or consider ex parte communications, or consider other communications made to them outside the presence of the parties concerning a pending or impending proceeding, except [under limited circumstances not applicable here].

initiating and considering ex parte communications;[10] (6) violated Canons 2 and 3[11] of the Code of Judicial Conduct by improperly disposing of criminal cases where the defendants were charged with crimes that were beyond the jurisdiction of the probate court and where the matters were outside the scope of Judge Fowler's authority as a probate judge;[12] (7) violated Canons 1 and 2[13] of the Code of Judicial Conduct by involving himself in a matter not properly before his court and using the prestige of his judicial office to improperly influence a litigant; (8) violated Canons 1 and 2 of the Code of Judicial Conduct by issuing court orders prohibiting the Sheriff of Twiggs County, or other lawful custodians of inmates, from awarding "good time" in accordance with OCGA § 42-4-7; and (9) violated Canon 2 of the Code of Judicial Conduct by improperly allowing unqualified persons to serve as interpreters in his court.[14] The JQC concluded that

> Judge Fowler's defense that as a non-lawyer judge it is difficult for him to perform the duties of his office cannot be persuasive. Non-lawyer judges of this state serve competently, ethically, and with proper respect for litigants and our Canons of Ethics and do so on a daily basis. Judge Fowler's misconduct resulted from willful actions and deeds, not his status as a non-lawyer judge. The level and quality of due process embraced by our Canons of Ethics, and thus due our citizenry, cannot be adjusted to the level of incompetence of a malfeasant judge.
>
> . . .
>
> The evidence in this case . . . demonstrates that Judge Fowler, who has served in two separate judicial offices for over nine years, still fails to grasp the basic tenets of criminal procedure to the extent that he does not even understand the burden of proof in a criminal matter. Judge Fowler points to his lack of training as the cause of his misconduct. This argument is not persuasive. Prior to

---

[10] Judge Fowler admitted at the hearing that he had routinely participated in ex parte communications.

[11] Canon 3 (B) (2) specifically provides that "Judges shall be faithful to the law and maintain professional competence in it."

[12] Judge Fowler admitted at the hearing that he had improperly disposed of cases where the defendants were charged with crimes that were beyond the jurisdiction of the Probate Court.

[13] Canon 2 (B) provides in relevant part that "Judges shall not lend the prestige of judicial office to advance the private interests of the judge or others."

[14] Judge Fowler admitted this allegation at the hearing.

assuming his current judicial position, Judge Fowler served as a Magistrate Judge and attended and participated in various training seminars. Judge Fowler's conduct, when taken as a whole, clearly demonstrates his lack of understanding of the requirements that he conduct himself at all times with competence, dignity and decorum.

Two probation officers from Judge Fowler's court, John Napier and Baron Fuqua, testified at the JQC hearing regarding Judge Fowler's misconduct, and the JQC found their testimony to be credible. Thereafter, on April 7, 2010, Judge Fowler wrote a letter to Middle Georgia Probation, LLC ("MGP") requesting that MGP remove Officers Napier and Fuqua from his court, because "these two probation officers [had] appeared in Atlanta at the Judicial Qualifications Commission's formal inquiry as witnesses adverse to [him]," and, as a result, "the level of trust necessary [for Judge Fowler] to effectively work [with Napier and Fuqua] ha[d] been destroyed."

On April 13, 2010, the JQC filed an emergency motion in this Court to temporarily suspend Judge Fowler without pay pending resolution of the formal charges against him. The JQC contended that Judge Fowler should be immediately removed from the bench without pay for having deliberately "retaliated against Fuqua and Napier for testifying truthfully before the Commission." The JQC also contended that "Judge Fowler's letter can . . . be easily seen as a threat against Napier and Fuqua should they testify against him in the future," in violation of OCGA § 16-10-32 (b) (1) (felony to threaten economic harm with the intent to hinder, delay, prevent, or dissuade any person from attending or testifying in an official proceeding). On April 14, 2010, this Court appointed H. Jerome Strickland of the Macon Judicial Circuit to serve as a Special Master pursuant to JQC Rule 25 (e) to conduct a hearing on the JQC's request to have Judge Fowler temporarily suspended.

At the hearing before the Special Master, it was revealed that, in his attempt to persuade MGP to remove Napier and Fuqua from his court, Judge Fowler informed MGP that he could replace MGP with a competing probation company to provide probation officers to his court. Judge Fowler admitted at the hearing that he started to consider having a new probation company replace MGP after he "got in the position" involving Napier and Fuqua's testimony against him. Judge Fowler also testified at the hearing that he would have expected Napier to remove himself from Judge Fowler's courtroom voluntarily so that Napier could "remov[e] himself from harm's way."

In light of the clear and convincing evidence presented at the hearing, the Special Master found that Judge Fowler

(1) [u]sed his office, his role as a judge, his control of MGP's provision of probationary services to his court, and the implied threat of replacing MGP with a competitor to get MGP to comply with his "request" that functionally was a directive for MGP to remove Napier and Fuqua from his court[;] . . . [and] (2) [u]sed his office, his role as judge, his control of MGP's provision of probationary services to his court, and the implied threat of replacing MGP with a competitor to retaliate against Napier and Fuqua for their testimony before the [JQC].

Accordingly, the Special Master determined that Judge Fowler should be temporarily suspended from his role as a judge, because his continued service as a judge would "(a) cause immediate and substantial public harm, (b) cause an erosion of public confidence in the orderly administration of justice, and (c) establish[ ] a violation of the Georgia Code of Judicial Conduct." See *In the Matter of: Inquiry Concerning a Judge*, 275 Ga. 404 (566 SE2d 310) (2002). See also Code of Judicial Conduct Canons 1 and 2 (A); JQC Rule 25 (e).

The Special Master agreed with the JQC that Judge Fowler should be temporarily removed, but, contrary to the JQC's request that Judge Fowler be suspended without pay, recommended that Judge Fowler be suspended with pay. The Special Master made this recommendation because, in his view,

[1] the . . . temporary suspension [was] not for the purpose of punishing Judge Fowler, but [was] rather for the sole purpose of preventing public harm and an erosion of public confidence in the orderly administration of justice by his continued service pending a final adjudication[; and [2]] a temporary suspension without pay would almost be the equivalent of an ultimate sanction before th[e Supreme] Court reaches its final decision on the charges against Judge Fowler.

On May 14, 2010, this Court issued an order accepting the recommendation of the Special Master and suspending Judge Fowler with pay pending resolution of the formal charges against him.

"Any judge may be removed, suspended, or otherwise disciplined for willful misconduct in office, or for . . . habitual intemperance, . . . or for conduct prejudicial to the administration of justice which brings the judicial office into disrepute." Ga. Const. of 1983, Art. VI,

Sec. VII, Par. VII (a). In reaching a determination as to whether or not a judge should be removed from office,

> [i]t is this Court's function "to review the findings of the [JQC], and to exercise its judgment based upon the entire record" . . . . [Cit.] In performing this independent function, we give substantial consideration and due deference to the JQC's ability to evaluate the credibility of the witnesses who appear before it. However, this Court reaches its own conclusions regarding disciplinary sanctions against a sitting judge. . . . In reaching our determination, this Court employs the "clear and convincing proof" standard to decide whether allegations against a judge are established by the evidence of record.

(Citations omitted.) *Inquiry Concerning a Judge*, supra, 275 Ga. at 406.

The evidence of record here clearly establishes several violations of Canons 1, 2, and 3 of the Code of Judicial Conduct. Judge Fowler readily admits to much of the misconduct, as the evidence showing the misconduct here is substantial. The record reveals that Judge Fowler's consistent pattern of misconduct stems, not from unintentional mistakes or a lack of legal education, as Judge Fowler contends, but from "willful misconduct in office, . . . habitual intemperance, . . . [and] conduct prejudicial to the administration of justice which brings the judicial office into disrepute." Ga. Const. of 1983, Art. VI, Sec. VII, Par. VII (a). Judge Fowler's misconduct, both before and after the hearing on the formal charges against him, shows that he is simply unwilling to live up to his legal and ethical responsibilities as a judge. His ignorance of the law is inexcusable, and his abuse of his judicial office unacceptable. Rather than showing any level of competence or fitness to continue to hold his judicial office, Judge Fowler instead has consistently

> demonstrated judicial incompetence, . . . disregarded the law as applied to his own conduct, . . . [taken] actions [that have] eroded public trust and confidence in the judiciary . . . engaged in behavior that is inappropriate for a sitting judge, and . . . shown a lack of the requisite judicial decorum and temperament. . . .

*Inquiry Concerning a Judge*, supra, 275 Ga. at 413 (6). Indeed, we cannot expect that members of the public will respect the law and remain confident in our judiciary while judges who do not respect and follow the law themselves remain on the bench. Accordingly, it is

hereby ordered that Judge Kenneth E. Fowler, Judge of the Probate Court of Twiggs County, be permanently removed from office instanter and be barred from ever holding or seeking elected or appointed judicial office in the State of Georgia.

*Permanently removed from office. All the Justices concur.*

DECIDED JUNE 28, 2010.

*Durham, McHugh & Duncan, James B. Durham, Moore, Ingram, Johnson & Steele, Robert D. Ingram, Balch & Bingham, Christopher S. Anulewicz, Michael J. Bowers, John D. Allen, Constance C. Russell*, for appellant.

*Hilbun & Helton, Jon F. Helton*, for appellee.