*Akin, Webster & Matson, Robert M. Matson*, for appellee.

S15Z1633. IN RE JUDICIAL QUALIFICATIONS COMMISSION
FORMAL ADVISORY OPINION NO. 239.
(794 SE2d 631)

PER CURIAM.

On August 28, 2013, the Judicial Qualifications Commission rendered Formal Advisory Opinion No. 239, which concerns Canon 2 (A) of the former Code of Judicial Conduct. In pertinent part, Canon 2 (A) provides that "[j]udges shall respect and comply with the law,"[1]

---

[1] In May 2015, this Court adopted a revised Code of Judicial Conduct, effective as of January 1, 2016. The pertinent provision of Canon 2 (A), however, was carried forward into the revised Code, where it now appears as Rule 1.1. Although the former Code no longer is effective, a proper understanding of Canon 2 (A) informs our understanding of Rule 1.1, and for that reason, Canon 2 (A) has continuing relevance.

and Opinion No. 239 concerns the obligation of judges to respect and comply with the constitutional guarantee of the right of public access to judicial proceedings. Concerned that Opinion No. 239 reflects some misunderstandings about the scope of that right and the extent to which it is clear and settled in the decisional law, the Council of State Court Judges asked the Commission to reconsider portions of Opinion No. 239. The Commission, however, declined to reconsider, and so, on July 10, 2015, the Council filed a petition with this Court, seeking a review of Opinion No. 239. In its response to the petition, the Commission conceded our authority to review its formal advisory opinions, but the Commission urged us to deny review of Opinion No. 239 on the merits.

On September 8, 2015, we granted the petition for review, and we directed the Commission and the Council to file briefs addressing the extent to which Opinion No. 239 rests upon clear and settled principles of constitutional law. The Commission and the Council filed briefs, but the Commission also filed a motion to dismiss, repudiating its earlier position,[2] and contending for the first time that this Court is without authority to review the Commission's formal advisory opinions. We heard oral argument on November 2, 2015. Having carefully considered the arguments of the Commission and the Council, we now conclude that this Court has authority to review formal advisory opinions rendered by the Commission, and we conclude as well that Opinion No. 239 reflects some misunderstandings about the extent to which the scope of the right of public access to judicial proceedings is clear and settled in the decisional law. Accordingly, pursuant to JQC Rule 22 (b), we direct the Commission to reconsider Opinion No. 239 consistent with the opinion of this Court.

1. At the outset, we must consider our authority to review formal advisory opinions rendered by the Commission. According to the Commission, we lack such authority for two reasons. First, this Court only has jurisdiction in cases that present a justiciable controversy, and the petition for review of Opinion No. 239 presents no justiciable

---

[2] In its initial response to the petition, the Commission acknowledged "that both the Georgia Constitution and the JQC Rules contemplate that the Supreme Court of Georgia has a supervisory role in [the] process [of rendering formal advisory opinions]." In its initial response to another petition filed by the Council in June 2015 — seeking review of Formal Advisory Opinion No. 241 — the Commission likewise conceded that "[b]oth the Georgia Constitution and the JQC Rules contemplate such review," and in that matter, the Commission stated that it "has no objection to the Supreme Court reviewing the opinion." See *In re Judicial Qualifications Commission Formal Advisory Opinion No. 241*, Case No. S15Z1597 (pending as of the date of this decision). As with Opinion No. 239, the Commission repudiated its original position on Opinion No. 241 and filed a motion to dismiss after we granted the petition for review.

controversy. Second, although the JQC Rules provide that this Court may ask the Commission to reconsider a formal advisory opinion, the Commission asserts that the Rules do not contemplate our review of its formal advisory opinions, and in any event, the Commission argues, our review of its formal advisory opinions would impair and interfere with the constitutional prerogative of the Commission to discipline judges. These contentions are without merit.[3]

    (a) "It is a settled principle of Georgia law that the jurisdiction of the courts is confined to justiciable controversies," *Fulton County v. City of Atlanta*, 299 Ga. 676 (791 SE2d 821) (2016), and "[t]here can be no justiciable controversy unless there are interested parties asserting adverse claims upon a state of facts which have accrued." *Pilgrim v. First Nat. Bank of Rome*, 235 Ga. 172, 174 (219 SE2d 135) (1975) (citation omitted). See also *Mullin v. Roy*, 287 Ga. 810, 812 (3) (700 SE2d 370) (2010) ("A controversy is justiciable when it is definite and concrete, rather than being hypothetical, abstract, academic, or moot." (citation and punctuation omitted)). The Commission is correct that the petition for review filed by the Council presents no justiciable controversy, but it does not follow that this Court is without authority to review Opinion No. 239. The Commission "confuses power and jurisdiction." *Wallace v. Wallace*, 225 Ga. 102, 111 (3) (a) (166 SE2d 718) (1969). As we explained in *Wallace*, nearly fifty years ago,

> [j]urisdiction refers to the types of cases the court can hear and decide. Power includes the authority to perform any function reasonably necessary to effectuate its jurisdiction, improve the administration of justice, and protect the judiciary as an independent department of the government.

*Id.* (citation omitted). This matter is not a case,[4] and whether we properly may review a formal advisory opinion rendered by the Commission is not a question of jurisdiction. Indeed, for many years, and on many occasions, this Court has reviewed advisory opinions rendered by the State Bar of Georgia,[5] and we have done so pursuant

---

[3] On November 8, 2016, voters approved a constitutional amendment that, among other things, confirms the authority of this Court to review formal advisory opinions rendered by the Commission. See Ga. L. 2016, p. 806.

[4] Indeed, on the first page of its motion to dismiss, the Commission acknowledges that "[t]his is not a case — or an appeal."

[5] See, e.g., *In re Formal Advisory Opinion No. 13-1*, 295 Ga. 749 (763 SE2d 875) (2014); *In re Formal Advisory Opinion No. 10-1*, 293 Ga. 397 (744 SE2d 798) (2013); *In re Formal Advisory Opinion No. 86-1*, 291 Ga. 267 (728 SE2d 688) (2012); *In re Formal Advisory Opinion No. 10-2*, 290 Ga. 363 (720 SE2d 647) (2012); *In re UPL Advisory Opinion No. 2010-1*, 290 Ga. 192

to our inherent "authority to govern the practice of law in Georgia," *In re UPL Advisory Opinion 2003-2*, 277 Ga. 472, 473 (588 SE2d 741) (2003), not our jurisdiction to decide cases as limited by Article VI, Section VI of the Constitution of 1983. Even the Commission concedes that we have the authority to review formal advisory opinions of the State Bar, the limits of our jurisdiction to decide cases notwithstanding. That this Court may be without *jurisdiction* to entertain a petition to review Opinion No. 239 does not, therefore, resolve the extent to which this Court has *authority* to entertain such a petition.

(b) Our Constitution establishes the Commission and vests it with the power to discipline judges, see Ga. Const. of 1983, Art. VI, Sec. VII, Par. VI, but the constitutional authority of the Commission does not put its advisory opinions beyond the review of this Court. Although the Commission possesses the authority to impose discipline to enforce the standards of judicial conduct,[6] nothing in the Constitution vests the Commission with the authority to set those standards in the first instance, to render authoritative and binding interpretations of the standards, or to offer any interpretation of the standards other than in the context of a particular disciplinary proceeding. To the contrary, the Constitution itself identifies in general terms the conduct for which judges may be disciplined, see Art. VI, Sec. VII, Par. VII,[7] and the authority to prescribe more particularized standards for judicial conduct belongs to this Court as an incident of the judicial power, see *Judicial Qualifications Comm. v. Lowenstein*, 252 Ga. 432 (314 SE2d 107) (1984),[8] an authority that

---

(722 SE2d 44) (2011); *In re Formal Advisory Opinion 05-11*, 284 Ga. 283 (667 SE2d 93) (2008); *In re Formal Advisory Opinion 05-4*, 281 Ga. 749 (642 SE2d 686) (2007); *In re Formal Advisory Opinion 04-1*, 280 Ga. 227 (626 SE2d 480) (2006); *In re UPL Advisory Opinion 2003-1*, 280 Ga. 121 (623 SE2d 464) (2005); *In re UPL Advisory Opinion 2002-1*, 277 Ga. 521 (591 SE2d 822) (2004); *In re UPL Advisory Opinion 2003-2*, 277 Ga. 472 (588 SE2d 741) (2003).

[6] This authority is not, however, unlimited, inasmuch as the Constitution requires the Commission to afford due process to judges and provides for this Court to review the imposition of discipline. See Ga. Const. of 1983, Art. VI, Sec. VII, Par. VIII ("No action shall be taken against a judge except after hearing and in accordance with due process of law. No removal or involuntary retirement shall occur except upon order of the Supreme Court after review."). See also JQC Rule 16 (concerning review of discipline by Supreme Court).

[7] The Constitution provides:

Any judge may be removed, suspended, or otherwise disciplined for willful misconduct in office, or for willful and persistent failure to perform the duties of office, or for habitual intemperance, or for conviction of a crime involving moral turpitude, or for conduct prejudicial to the administration of justice which brings the judicial office into disrepute. . . .

Ga. Const. of 1983, Art. VI, Sec. VII, Par. VII (a).

[8] As we explained in *Lowenstein*,

Courts have inherent authority to regulate the conduct of attorneys as officers of the court and to control and supervise the practice of law generally, in and out of court. Regulation of the practice of law is the function of the judiciary. It follows that

we have exercised by our adoption of the Code of Judicial Conduct. Moreover, the Constitution expressly vests this Court with the authority to adopt rules for the Commission, see Art. VI, Sec. VII, Par. VII (a),[9] and pursuant to that authority, we have adopted JQC Rule 22, subsection (a) of which gives the Commission the power "to render official formal advisory opinions concerning a proper interpretation of the Code of Judicial Conduct." JQC Rule 22 (a) is the current source of the Commission's authority to render formal advisory opinions.

Other subsections of JQC Rule 22 limit that authority, however, and make clear that the Commission does not have the final word on a proper interpretation of the Code of Judicial Conduct. Indeed, subsection (d) provides that "[t]he Supreme Court's determination of the propriety of particular conduct shall supersede any conflicting advisory opinion of the Commission,"[10] and more significantly, subsection (b) provides that "[t]he Commission shall examine and reconsider any of its advisory opinions upon the request of the Supreme Court." The authority of this Court to require the Commission to "examine and reconsider any of its advisory opinions"[11] implies a

---

this Court possesses the authority to regulate also the conduct of judges — including conduct during judicial elections. . . . Power includes the authority to perform any function reasonably necessary to effectuate its jurisdiction, improve the administration of justice, and protect the judiciary as an independent department of the government.

252 Ga. at 433-434 (1) (citations and punctuation omitted). See also *Wallace*, 225 Ga. at 109-112 (3) (a) (holding that "creation of a unified state bar was properly a judicial function for the highest court in our judicial department").

[9] "The Supreme Court shall adopt rules of implementation." Ga. Const. of 1983, Art. VI, Sec. VII, Par. VII (a).

[10] According to the Commission, because subsection (d) speaks of this Court considering "the propriety of particular conduct," subsection (d) must refer only to our review of disciplinary proceedings and does not suggest in any way that this Court has the authority to review formal advisory opinions. That argument presupposes, however, that a formal advisory opinion does not concern "the propriety of particular conduct." JQC Rule 22 (c) suggests otherwise, inasmuch as it clearly seems to contemplate that formal advisory opinions must be based on particularized facts, whether actual or only hypothetical. Indeed, subsection (c) provides:

The Commission and the Supreme Court shall consider compliance with an advisory opinion to be evidence of a good faith effort to comply with the Code of Judicial Conduct, but only to the extent that *the underlying facts are identical.*

(Emphasis supplied.)

Although Opinion No. 239 largely speaks in abstract and generalized terms, the opinion offers several examples of conduct that the Commission believes to be improper, and the petition of the Council is directed to some of those very examples. If those examples were not particularized enough to describe "particular conduct," it would seem to follow that the examples are not particularized enough to form the basis for a formal advisory opinion at all. The Council, however, does not complain that the examples of specific conduct in Opinion No. 239 are insufficiently particularized to form the basis for a proper advisory opinion, and so, for the purposes of this review, we will accept that the examples are specific enough.

[11] Although JQC Rule 22 (b) speaks of a "request" by this Court, it provides that the Commission "*shall* examine and reconsider any of its advisory opinions upon [such a] request."

power to give guidance to the Commission,[12] and that, in turn, necessarily implies a power to review the formal advisory opinions that are the subject of such guidance.[13]

The Commission concedes that JQC Rule 22 is a constitutional exercise of our authority to make rules for the Commission, but it contends nevertheless that our review of its formal advisory opinions would interfere in an unprecedented way with its constitutional prerogative to discipline judges. JQC Rule 22 (b) notwithstanding, the Commission insists that the Court should exercise a power of review only in disciplinary proceedings, and only after the Commission has concluded those proceedings and made a recommendation of discipline. That circumstance is, of course, one in which the Constitution specifically and explicitly contemplates our review, see Ga. Const. of 1983, Art. VI, Sec. VII, Par. VIII, and on several occasions, we have exercised a power of review following the conclusion of disciplinary proceedings before the Commission.[14] But we previously have undertaken to review the proceedings of the Commission in other circumstances, including a matter, for instance, in which we directed the Commission to close an ongoing disciplinary inquiry because the subject of the inquiry was not subject to the jurisdiction

---

(Emphasis supplied.) As we have explained before, " '[s]hall' is generally construed as a word of command." *Mead v. Sheffield*, 278 Ga. 268, 269 (601 SE2d 99) (2004).

[12] The Commission concedes this point: "Inherent in the [Rule 22 (b)] power is the ability to provide the Commission with the Court's opinion on the issue."

[13] JQC Rule 22 (b) does not specify the manner in which this Court is to review formal advisory opinions nor the means by which the Court may require the Commission to examine and reconsider. Those questions, therefore, are left to the discretion of the Court. In this instance, we concluded that briefing and oral argument would be helpful to our review, and so, we proceeded with briefs and argument, much as we sometimes do when reviewing a formal advisory opinion of the State Bar. See, e.g., State Bar Rules 4-403 (d) and 14-9.1 (g) (3). We also thought it important to report our conclusions about Opinion No. 239 openly by way of published opinion. That we have not done these things before is inconsequential, especially considering that the Commission has failed to identify any earlier occasion on which we were presented with a petition to review a formal advisory opinion rendered by the Commission. At oral argument, the Commission argued that our review of its formal advisory opinion in such a public way — with briefs filed by the interested parties and available to the public, oral argument in an open courtroom, and a decision by published opinion — is somehow improper. Instead, the Commission argued, if the Court was to review Opinion No. 239, we ought to do so behind closed doors and then communicate our decision only by a letter directed to the Commission. That the Commission would take such a position with respect to a formal advisory opinion about *the right of public access to judicial proceedings* strikes us as quite ironic. In any event, how best to proceed with our review of Opinion No. 239 is for this Court to decide, not the Commission.

[14] See, e.g., *In re Inquiry Concerning a Judge*, 289 Ga. 633 (715 SE2d 56) (2011); *In re Inquiry Concerning a Judge*, 287 Ga. 467 (696 SE2d 644) (2010); *In re Inquiry Concerning a Judge*, 275 Ga. 404 (566 SE2d 310) (2002); *In re Inquiry Concerning a Judge*, 265 Ga. 843 (462 SE2d 728) (1995); *In re Inquiry Concerning a Judge*, 265 Ga. 326 (454 SE2d 780) (1995); *In re Inquiry Concerning a Judge*, 250 Ga. 796 (300 SE2d 807) (1983).

of the Commission. See, e.g., *In re Inquiry Concerning a Judge*, 259 Ga. 831, 832 (388 SE2d 683) (1990). Our authority to review formal advisory opinions rendered by the Commission is necessarily implied by JQC Rule 22, and to the extent that JQC Rule 22 itself is constitutional — it is, and the Commission concedes that it is — our exercise of that implied authority in no way impairs the constitutional prerogative of the Commission to discipline judges.[15] This Court has the authority to review Opinion No. 239 upon the petition of the Council, and the motion of the Commission to dismiss this matter is denied.

2. Canon 2 (A) provides that "[j]udges shall respect and comply with the law," but it does not demand perfection in the judicial discernment and application of the law. "All judges make mistakes. (Even us.)" *Dietz v. Bouldin*, ___ U. S. ___ (III) (136 SCt 1885, 195 LE2d 161) (2016). Canon 2 (A) is not implicated by "mere decisional or judgmental errors." *In re Inquiry Concerning a Judge*, 265 Ga. 843, 851 (462 SE2d 728) (1995). See also *Leitch v. Fleming*, 291 Ga. 669, 673-674 (3) (732 SE2d 401) (2012). Rather, Canon 2 (A) requires a judge to endeavor in good faith and with her best efforts to discern the law, and it demands that she then attempt to apply the law as she honestly understands it to the cases that come before her. A knowing and willful misapplication of the law, of course, would amount to bad faith and thereby implicate the Code of Judicial Conduct. See *In re Inquiry Concerning a Judge*, 265 Ga. 326, 328 (1) (454 SE2d 780) (1995). A mistake of law produced by deliberate indifference or willful ignorance likewise would amount to bad faith. See *In re Inquiry*

[15] The Commission argues that the Constitution separately establishes the Court and the Commission as independent parts of the Judicial Branch and vests each with distinct constitutional prerogatives. That the Constitution separately establishes the Court and the Commission is true, and it is equally true that the Constitution vests the Commission with a power of discipline. See Ga. Const. of 1983, Art. VI, Sec. VII, Par. VI. The Constitution, of course, also establishes other parts of the Judicial Branch, including the magistrate courts, probate courts, juvenile courts, state courts, superior courts, and Court of Appeals, see Art. VI, Sec. I, Par. I, as well as the council of each class of courts. See Art. VI, Sec. IX, Par. I. Each class of courts has its own constitutional prerogatives and jurisdiction, and yet no serious person could claim that this Court would somehow unconstitutionally impair the prerogatives or jurisdiction of a lower court if we were to establish proper rules for the lower court or properly exercise our jurisdiction to review its decisions. The Constitution, after all, specifically contemplates such things. See Art. VI, Sec. VI, Par. II (exclusive appellate jurisdiction), III (general appellate jurisdiction), V (certiorari jurisdiction); Art. VI, Sec. IX, Par. I (rulemaking authority). It likewise specifically authorizes this Court to make rules for the Commission, see Art. VI, Sec. VII, Par. VII (a), and it expressly contemplates our review of disciplinary proceedings in the Commission. See Art. VI, Sec. VII, Par. VIII. Moreover, by virtue of its constitutional establishment as the highest court in this state, this Court is vested by the Constitution with the "inherent power essential to protect the judiciary as an independent branch of state government and to maintain a court system capable of providing for the administration of justice in an orderly and efficient manner." *Garcia v. Miller*, 261 Ga. 531, 532 (3) (408 SE2d 97) (1991).

*Concerning a Judge*, 265 Ga. at 849 (5). Moreover, Canon 3 (B) (2) of the former Code of Judicial Conduct provides that "[j]udges shall be faithful to the law and maintain professional competence in it,"[16] and so, even in the absence of bad faith, misapplications of the law produced by unreasonable ignorance or egregious misunderstandings of fundamental and easily discernible legal principles may implicate the Code. See *In re Inquiry Concerning a Judge*, 275 Ga. 404, 408-409 (566 SE2d 310) (2002). See also *Leitch*, 291 Ga. at 675 (Nahmias, J., concurring) (noting that Code of Judicial Conduct may be implicated by "judges who consistently or willfully fail to follow clear and binding legal rules and precedents"). But the law is not always easily discernible, and when the law is unclear or unsettled, an honest misunderstanding or misapplication of the law ordinarily does not implicate the Code. See *Leitch*, 291 Ga. at 673-674 (3). See also *In re Quirk*, 705 S2d 172, 180-181 (La. 1997) (legal error amounts to judicial misconduct where "a legal ruling or action [is] made contrary to clear and determined law about which there is no confusion or question as to its interpretation and where this legal error was egregious, made in bad faith, or made as part of a pattern or practice of legal error" (footnote omitted)); *Matter of Benoit*, 487 A2d 1158, 1163-1164 (Me. 1985) (legal error amounts to judicial misconduct "if a reasonably prudent and competent judge would consider that conduct obviously and seriously wrong in all the circumstances," but not "every error of law, even one that such a reasonable judge might avoid making," warrants discipline). Absent bad faith, errors in the judicial discernment and application of the law implicate Canon 2 (A) only to the extent that the pertinent law is clear and settled.

Rule 22 (a) authorizes the Commission to "render official formal advisory opinions concerning a proper interpretation of the Code of Judicial Conduct." It does not authorize the Commission to render advisory opinions about the proper interpretation of constitutional, statutory, or common law. Indeed, the judicial discernment of constitutional, statutory, or common law is an exercise of judicial power, see *Marbury v. Madison*, 5 U. S. 137, 177 (2 LE 60) (1803), and in Georgia, the judicial power is "vested exclusively" in the magistrate courts, the probate courts, the juvenile courts, the state courts, the superior

---

[16] Rule 2.2 of the revised Code of Judicial Conduct provides that "[j]udges shall dispose of all judicial matters fairly, promptly, and efficiently," and Rule 2.5 provides that "[j]udges shall perform judicial and administrative duties competently, diligently, and without bias or prejudice." The commentary to Rule 2.2 explains that the revised Code requires, among other things, a certain degree of legal competence: "Competence in the performance of judicial duties requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary to perform a judge's responsibilities of judicial office."

courts, the Court of Appeals, and the Supreme Court. See Ga. Const. of 1983, Art. VI, Sec. I, Par. I.[17] The Commission is not vested with any judicial power. To the extent that a principle of constitutional, statutory, or common law is clear and settled, adherence to that principle is a part of the obligation that judges owe under Canon 2 (A), and for that reason, we conclude that the Commission properly may render formal advisory opinions about the duty to "respect and comply with" such a clear and settled legal principle. But to the extent that a principle of constitutional, statutory, or common law is unclear or unsettled, it is beyond the purview of the Commission to render a formal advisory opinion that endeavors to discern a correct understanding of the law. See *People ex rel. Harrod v. Ill. Courts Commission*, 372 NE2d 53, 66 (Ill. 1977) (because judicial conduct commission was not vested with judicial power, it had "no power to interpret statutory ambiguities or to compel judges to conform their conduct to any such interpretation"). See also *In re Quirk*, 705 S2d at 183 ("That the Judiciary Commission and Judge Quirk have a difference of opinion as to how the existing Establishment Clause jurisprudence should be interpreted does not and should not constitute a finding of judicial misconduct by Judge Quirk."). "To grant the Commission such authority would interfere with an independent judicial system and would place trial judges in an untenable position." *People ex rel. Harrod*, 372 NE2d at 66.

3. As to Opinion No. 239, the Council notes that it is unobjectionable to the extent that it simply refers judges to binding precedents of this Court and the United States Supreme Court concerning the constitutional guarantee of the right of public access to judicial proceedings, and that certainly is true.[18] In Opinion No. 239, the Commission pointed to a number of binding precedents on that subject, including *Richmond Newspapers v. Virginia*, 448 U. S. 555 (100 SCt 2814, 65 LE2d 973) (1980), *Press-Enterprise Co. v. Superior Court of Cal.*, 464 U. S. 501 (104 SCt 819, 78 LE2d 629) (1984), *Waller v. Georgia*, 467 U. S. 39 (104 SCt 2210, 81 LE2d 31) (1984), *Presley v. Georgia*, 558 U. S. 209 (130 SCt 721, 175 LE2d 675) (2010), and *Purvis v. State*, 288 Ga. 865 (708 SE2d 283) (2011). We agree that a judge presented with a question about the right of public access might be

---

[17] The Constitution also permits the General Assembly to authorize municipal courts to exercise a limited judicial power. See Ga. Const. of 1983, Art. VI, Sec. I, Par. I.

[18] This holds true because it is indisputable as a *general* proposition that the public has a right of access to judicial proceedings. Courtrooms are presumptively open to the public, and the Commission certainly can say so. It may not, however, opine about unsettled questions concerning the *precise* limits of the general rule. Determination of those limits is a function of the judiciary, not the Commission.

well advised to consult these precedents, as well as others not mentioned in Opinion No. 239. See, e.g., *Press-Enterprise Co. v. Superior Court of Cal.*, 478 U. S. 1 (106 SCt 2735, 92 LE2d 1) (1986); *Globe Newspaper Co. v. Superior Court*, 457 U. S. 596 (102 SCt 2613, 73 LE2d 248) (1982); *State v. Brown*, 293 Ga. 493 (748 SE2d 376) (2013).[19] There is nothing inherently wrong with the Commission identifying useful precedents to which judges may wish to refer or accurately stating the holdings of such precedents.[20]

To the extent, however, that Opinion No. 239 endeavors to extrapolate broader principles of law from these precedents, it raises the worrisome prospect that the Commission has wandered into a field of law that is unclear and unsettled, something that is beyond its purview. The Council contends that the Commission has done exactly that by its identification of certain acts and practices as constitutionally intolerable. Near the end of Opinion No. 239, the Commission wrote:

> It is difficult to catalog succinctly the volume and variety of complaints we regularly receive on this issue. Some complaints involve court staff or sheriffs' deputies excluding the public. Other complaints involve court personnel demands made on members of the public to state their business prior to being allowed to enter a public courtroom. In some courthouses, signs are posted on the entrance doors to a courtroom that forbid the admittance of a certain class of persons, signs such as "no children," "attorneys and defendants only," or "no guests or family permitted."
>
> All of the above practices are, generally, improper. We recognize, however, the authority of the judge to maintain the integrity and decorum of the courtroom, and in no way expect a judge to permit loud or unruly children or adults to disrupt court proceedings. Yet the law requires that such disruptions to public proceedings be dealt with on a case-by-case basis.

Formal Advisory Opinion No. 239 (citation omitted). The Council asserts that the law is not clear and settled that the constitutional guarantee of the right of public access extends to children, and the

---

[19] We decided *Brown* less than two weeks after the Commission issued Opinion No. 239.

[20] As to holdings of precedents, we do caution that jurists may reasonably disagree about what constitutes a holding. Compare *New Port Largo v. Monroe County*, 985 F2d 1488, 1495, n. 1 (11th Cir. 1993) (Tjoflat, J., concurring specially), with id. at 1500, nn. 6, 7 (Edmondson, J., concurring specially).

Council likewise contends that the law is not clear and settled that inquiries by security personnel amount to a closure in violation of the constitutional guarantee. With respect to these aspects of Opinion No. 239, we agree that the Commission has gone beyond a mere interpretation of Canon 2 (A) and has wandered into unclear and unsettled areas of constitutional law.[21]

(a) According to Opinion No. 239, a practice of excluding children as a class from judicial proceedings is unconstitutional. We note, however, that none of the precedents cited in Opinion No. 239 concerns the admission of children of tender years to a courtroom, and whether children are constitutionally entitled to the same extent as adults to attend court seems to be an open and debatable question. Indeed, although some courts have found that the exclusion of children in some circumstances may violate the right of public access, see, e.g., *United States v. Rivera*, 682 F3d 1223 (9th Cir. 2012) (exclusion of defendant's seven-year-old son), a few courts have concluded otherwise, even when the children excluded had a close relationship with a party, see, e.g., *United States v. Perry*, 479 F3d 885, 890-891 (II) (A) (D.C. Cir. 2007) (exclusion of eight-year-old son of accused), and when children as a class were excluded. See, e.g., *State v. Lindsey*, 632 NW2d 652, 660-661 (II) (Minn. 2001) (blanket exclusion of children, which led to removal of two children of unknown age and unknown relationship to the accused). Given the current state of the law, fair-minded jurists may reasonably disagree about the extent to which the constitutional guarantee of the right of public access to judicial proceedings requires the admittance of children of tender years, and decisions to admit or exclude children do not, without more, implicate Canon 2 (A).[22]

---

[21] The Council also contends that Opinion No. 239 goes too far by characterizing the delayed admission of late arriving spectators during critical stages of proceedings — during closing arguments or a jury charge, for instance — as constitutionally intolerable. But we do not find such a characterization in Opinion No. 239, and we decline to review the opinion with regard to something that it does not address. We do note, however, that the United States Supreme Court has said that "limitations on the right of access that resemble 'time, place, and manner' restrictions on protected speech would not be subjected to [the same] strict scrutiny [as other denials of the right of access]." *Globe Newspaper*, 457 U. S. at 607 (III) (B), n. 17. The Council also asks the Court to require the Commission to revise Opinion No. 239 with respect to certain proceedings in accountability courts, another matter that is not addressed in the opinion at all. Again, because Opinion No. 239 says nothing of accountability courts, we decline to direct the Commission to reconsider an aspect of its opinion that is nonexistent.

[22] In reviewing Opinion No. 239 to ascertain the extent to which it is based on clear and settled law, we will not undertake to definitively resolve questions that are now unclear and unsettled. Constitutional law should develop through the ordinary course of deciding cases, not through the rendering or review of advisory opinions.

(b) Opinion No. 239 says that it is unconstitutional for court staff or security personnel to inquire of a courthouse visitor about the reasons for his visit. The law, however, is not clear and settled on this point. Certainly, a court has an obligation "to take *reasonable* measures to accommodate public attendance" at least with respect to the public's right to attend criminal trials. *Purvis*, 288 Ga. at 868 (1) (emphasis supplied). But the court also is charged with "adopting and maintaining reasonable measures to provide security, at the exterior of courthouses and as needed for specific interior areas or courtrooms." *Brown*, 293 Ga. at 497 (Nahmias, J., concurring). Neither this Court nor the United States Supreme Court has decided that no questions ever may be asked of persons seeking admittance to the courthouse or a courtroom, and we note that a number of federal courts have held that requiring such persons to produce photo identification prior to their admittance does not violate the constitutional guarantee of the right of public access. See, e.g., *United States v. Smith*, 426 F3d 567, 573-574 (I) (2nd Cir. 2005); *United States v. DeLuca*, 137 F3d 24, 32, 35 (II) (B) (1st Cir. 1998); *United States v. Brazel*, 102 F3d 1120, 1155-1156 (II) (J) (11th Cir. 1997). So long as court staff and security personnel understand that a member of the public is entitled to attend court whether or not he has a case pending therein, no clear and settled law prohibits court staff and security personnel from inquiring of persons seeking admittance about what has brought them to the courthouse.

In an apparent effort to limit its scope, Opinion No. 239 says that the practices that it identifies as unconstitutional are only "generally" improper. That offers little comfort, however, to judges who must address these issues every day. If a judge were to carefully consider the law and honestly determine that she ought to do what the Commission has deemed constitutionally intolerable, she then would have to choose between following the law as she understands it or yielding to the contrary understanding of the Commission. In those circumstances, following the law as she understands it would expose the judge to disciplinary proceedings, even if those proceedings ultimately would vindicate the judge. To permit the Commission to put a judge in that position would compromise the independence of the judiciary. Until it is clear and settled in the decisional law whether and to what extent the practices at issue are unconstitutional, it is not for the Commission to opine about what the Constitution means. Accordingly, we direct the Commission to reconsider Opinion No. 239 consistent with the opinion of this Court.

*Judicial Qualifications Commission directed to reconsider Formal Advisory Opinion No. 239. All the Justices concur.*

DECIDED NOVEMBER 30, 2016.

*Hall Booth Smith, Nathan A. Gaffney*, for Council of State Court Judges of Georgia.

*Brinson Askew Berry Siegler Richardson & Davis, Norman S. Fletcher, Lee B. Carter*, for Judicial Qualifications Commission.

*Kilpatrick Townsend & Stockton, Lesli N. Gaither, Thomas M. Clyde; Stuckey & Manheimer, Hollie G. Manheimer; Gerald R. Weber, Jr.; Sarah E. Geraghty*, amici curiae.