310 Ga. 403
FINAL COPY

S18Z1636.  INQUIRY CONCERNING JUDGE ROBERT M. CRAWFORD.

PER CURIAM.

This judicial discipline matter is before the Court on the Report and Recommendation of the Hearing Panel of the Judicial Qualifications Commission ("JQC") and a timely notice of exceptions filed by Robert M. "Mack" Crawford. The Hearing Panel recommended that Crawford, who later resigned as a Superior Court Judge of the Griffin Judicial Circuit, be "removed from office" for violating Rule 1.1 of the Georgia Code of Judicial Conduct ("CJC"), which says that "Judges shall respect and comply with the *law*."[1] The Hearing Panel did not recommend that Crawford be permanently barred from seeking or holding judicial office.[2] The

---

[1] The CJC italicizes terms that are defined in its Terminology section. The Terminology section defines "law" to include, among other things, statutes and court rules, but not non-emergency court orders.

[2] JQC Rule 6 (B) (1) identifies removal from office "with . . . a prohibition on seeking or holding judicial office in the future" as a permissible sanction.

JQC Director did not file a notice of exceptions, thereby accepting the Hearing Panel's recommendation. See JQC Rule 24 (F). Under rules promulgated by this Court, we must now file a written decision either dismissing this matter or imposing a sanction. See JQC Rule 25 (D) (1). For the reasons stated below, we dismiss.

1. At the direction of the JQC's Investigative Panel, the Director filed a formal complaint against Crawford. The complaint alleged that Crawford violated CJC Rule 1.1 in two ways: (1) by "impermissibly converting money from the registry of the Superior Court of Pike County . . . when he ordered the Pike County Clerk via handwritten note to disburse $15,675.62 in funds from the court registry to him via check" and "then cashed and used a portion of the check for his personal benefit and deposited the remainder of this money in his personal checking account," although he later returned the funds; and (2) by "failing to follow the proper procedure for the disbursement of funds, even if the money had been his, as required by law," noting the certification requirement for withdrawal of funds from a court registry contained in Uniform

2

Superior Court Rule 23. In 2002, when Crawford was in private practice, he had deposited the funds into the registry from his client trust account in connection with a lawsuit. The JQC complaint acknowledged that Crawford claimed that at least some of the money was owed to him as attorney fees and expenses. The complaint sought Crawford's removal from office but not a ban on seeking or holding judicial office in the future.[3]

At a formal hearing before the JQC Hearing Panel, the Pike County Clerk, who had held that position for 30 years, testified — and the Hearing Panel later found — that Crawford did not order the Clerk to disburse the funds to him, nor did the Clerk feel compelled to do so; she simply trusted Crawford because he was a close, longtime friend. The Hearing Panel issued its Report and Recommendation, concluding that there was clear and convincing evidence that Crawford violated CJC Rule 1.1 by taking money that

---

[3] The complaint also charged Crawford with violating CJC Rule 1.3, but the Hearing Panel issued a "directed verdict" on that charge.

was "not demonstrably his own" and by failing to comply with the certification requirement.

To assist in our review of this judicial discipline matter, on August 10, 2020, we directed Crawford and the Director to file briefs on three issues: (1) whether there is clear and convincing evidence that Crawford violated CJC Rule 1.1; (2) whether the JQC was validly constituted at all relevant times; and (3) whether this Court should ban Crawford from seeking or holding judicial office in the future in light of the evidence. In connection with the third issue, we noted that the Director did not seek such a sanction in the formal complaint, the issue was not raised before the Hearing Panel, and the Hearing Panel did not recommend a lifetime ban.

2. Crawford contends that the JQC failed to prove by clear and convincing evidence that he violated CJC Rule 1.1 in a manner sufficient to support his removal from office and that the Hearing Panel erred in concluding otherwise based on the evidence before it. See JQC Rule 7 ("Charges of misconduct . . . shall be established by the standard of clear and convincing evidence. . . ."). It is undisputed

4

that Crawford violated CJC Rule 1.1 by obtaining funds from the court registry without complying with the certification requirement of Uniform Superior Court Rule 23. However, while such a violation is serious, we express doubt that the complaint would have sought or the Hearing Panel would have recommended Crawford's removal from office for violating CJC Rule 1.1 based solely on a single violation of the certification requirement of Uniform Superior Court Rule 23. As a result, and particularly in light of the sanction sought here, we move to the clearly more serious of the Hearing Panel's CJC Rule 1.1 findings.

It also seems clear that, while the evidence before the Hearing Panel likely was sufficient to support a finding that Crawford violated CJC Rule 1.1 by impermissibly converting the funds he obtained from the court registry under a preponderance of the evidence standard of proof, and perhaps even under the higher clear and convincing evidence standard, that is a close question; we note that the evidence on that issue certainly was not overwhelming. See *Inquiry Concerning Judge Peters*, 289 Ga. 633, 635 (715 SE2d 56)

(2011) (explaining that in judicial discipline matters, "this Court employs the clear and convincing proof standard to decide whether allegations against a judge are established by the evidence of record" (citation and punctuation omitted)). Critical to our analysis of the evidence, though, is the fact that Crawford has since resigned, thereby voluntarily removing himself from office, which was the very sanction sought in the formal complaint and recommended by the Hearing Panel. Under these circumstances, we conclude that it is unnecessary for us to decide definitively whether the evidence was sufficient to support a finding by clear and convincing evidence that Crawford violated CJC Rule 1.1 by impermissibly converting the funds from the court registry so as to warrant his removal from office.[4]

3. Crawford also contends that the Hearing Panel was not properly constituted when it considered this matter because the

---

[4] We note that Crawford later pled guilty to misdemeanor theft arising from the same incident and was sentenced to serve 12 months on probation. As part of a plea deal, Crawford resigned from office and agreed not to seek or hold judicial office while on probation. See *Crawford v. Balli*, 355 Ga. App. 297, 297 n.1 (844 SE2d 236) (2020).

names of its members were not submitted to the Senate by January 15, 2018. See OCGA § 15-1-21 (g) (1) ("The names of the appointees . . . shall be submitted by the appointing authorities to the Senate no later than the third Monday in January. . . . [I]f an individual's name is not submitted by such deadline, he or she shall not be eligible for confirmation."). However, Crawford presented no testimony or other evidence before the Hearing Panel to support this contention, and the Director likewise did not present any testimony or other evidence on this question. Accordingly, there is no record evidence upon which we could decide this issue in Crawford's favor. He is therefore deemed to have abandoned this issue. See *Daker v. State*, 300 Ga. 74, 77 n.6 (792 SE2d 382) (2016) (holding that enumeration of error not supported by citations to record was abandoned).

4. That leaves for consideration only the question of whether this Court should ban Crawford from seeking or holding judicial office in the future. As Crawford acknowledges, the JQC has continuing jurisdiction over former judges regarding timely

7

allegations of misconduct that occurred during their service as a judge. See CJC, Application D; JQC Rule 2 (B) (2). Crawford also acknowledges that this Court is not constrained by the Hearing Panel's recommendation as to the appropriate sanction and that we generally have the authority to impose any permissible sanction — including a harsher sanction — despite what the JQC recommends. See *In the Matter of: Inquiry Concerning a Judge No. 01-44*, 275 Ga. 404, 404-406 (566 SE2d 310) (2002). As noted above, JQC Rule 6 (B) (1) identifies removal from office "with . . . a prohibition on seeking or holding judicial office in the future" as a permissible sanction, and in the past we have imposed a permanent ban on seeking or holding judicial office, see, e.g., *Inquiry Concerning Judge Peters*, 289 Ga. at 636; *In the Matter of: Inquiry Concerning a Judge No. 92-80*, 262 Ga. 804, 804 (426 SE2d 552) (1993). We conclude, however, that such a sanction would not be appropriate here.

First, as noted in Division 2, above, the evidence that Crawford impermissibly converted the funds from the court registry is not overwhelming. Second, the alleged misconduct did not directly

8

involve Crawford's exercise of his judicial duties; to the contrary, the Hearing Panel specifically found that the Director failed to prove that Crawford had "len[t] the prestige of [his] office to advance [his] private interests" in connection with the disbursement of the funds as required to support the additional charge of violating CJC Rule 1.3. Third, Crawford voluntarily removed himself from office by resigning, which was the very sanction sought in the formal complaint and recommended by the Hearing Panel. Finally, Crawford's plea agreement prohibits him from seeking or holding judicial office while he is on probation, and there is no indication in the record or in Crawford's filings in this Court that he plans to seek a judgeship at any point in the future.

For these reasons, a permanent ban on seeking or holding judicial office would not be an appropriate sanction here. Accordingly, we hereby dismiss this matter.

*Dismissed. All the Justices concur, except Nahmias, P. J., and McMillian, J., disqualified. Warren, J., not participating.*

9

BLACKWELL, Justice, concurring.

Even if this Court had the power to forever disqualify Judge Robert M. Crawford from holding judicial office, I would not exercise it in this case, especially considering that the Director of the Judicial Qualifications Commission did not seek a lifetime disqualification in the proceedings below, and the Hearing Panel did not recommend it. But I have some doubt that the Court has the power to impose a lifetime disqualification in any event. For these reasons, I concur fully in the judgment and opinion of the Court, but I write separately to explain my reasons for doubting that the Court has the power to forever disqualify someone from holding judicial office.

Our authority to discipline judges derives from the Georgia Constitution of 1983, which provides:

> Any judge may be *removed, suspended, or otherwise disciplined* for willful misconduct in office, or for willful and persistent failure to perform the duties of office, or for habitual intemperance, or for conviction of a crime involving moral turpitude, or for conduct prejudicial to the administration of justice which brings the judicial office into disrepute.

Ga. Const. of 1983, Art. VI, Sec. VII, Par. VII (a) (emphasis

supplied). The Constitution divides this power of judicial discipline between the Commission and this Court, assigning to the Commission the power to investigate, prosecute, try, and recommend disciplinary sanctions in cases of judicial misconduct, and vesting the Court with the power to impose disciplinary sanctions after review.[5] In addition, the Constitution provides that "[t]he Supreme Court shall adopt rules of implementation," Ga. Const. of 1983, Art. VI, Sec. VII, Par. VII (a), and pursuant to this direction, the Court has adopted the "Rules of the Judicial Qualifications Commission of Georgia."

Rule 6 (B) purports to identify six disciplinary sanctions that may be imposed by the Court in cases of judicial misconduct:

- Removal from judicial office, Rule 6 (B) (1);

---

[5] The Constitution provides that the Commission has "the power to discipline, remove, and cause involuntary retirement of judges." Ga. Const. of 1983, Art. VI, Sec. VII, Par. VI (a). The Constitution also provides, however, that "[n]o removal . . . shall occur except upon order of the Supreme Court after review." Ga. Const. of 1983, Art. VI, Sec. VII, Par. VIII. Reading these provisions of the Constitution together, it is clear that the power to investigate, prosecute, try, and recommend disciplinary sanctions in cases of judicial misconduct is vested in the Commission, but the power to impose the sanction of removal is constitutionally reserved to the Court. See In re Judicial Qualifications Comm. Formal Advisory Op. No. 239, 300 Ga. 291, 294-295 (1) (b) & n.6 (794 SE2d 631) (2016).

11

- "[A] prohibition on seeking or holding judicial office in the future," Rule 6 (B) (1);

- Suspension from judicial office, Rule 6 (B) (2);

- "[L]imitations on the performance of judicial duties," Rule 6 (B) (3);

- Censure, Rule 6 (B) (4); and

- Public reprimand, Rule 6 (B) (5).

Two of these sanctions — removal and suspension — are expressly and specifically authorized by the Constitution. And three of the sanctions — limitations on the performance of judicial duties, censure, and public reprimand — are *lesser* sanctions than those expressly authorized by the Constitution and, therefore, fit comfortably within the constitutional authorization for judges to be "otherwise disciplined" for judicial misconduct. Because these five sanctions are authorized by the Constitution, to the extent that Rule 6 (B) provides for their imposition, Rule 6 (B) is a proper exercise of our constitutional authority to "adopt rules of implementation."

But the authority to "adopt rules of implementation" for the

12

exercise of the power of judicial discipline cannot reasonably be understood to give this Court the authority to *redefine* the power of judicial discipline and *expand* it beyond its constitutional limits. To the extent that Rule 6 (B) provides for a lifetime disqualification from judicial office, it is a proper exercise of our authority to "adopt rules of implementation" only if a lifetime disqualification is among the sanctions authorized by the Constitution. And I have doubts that it is.

To be sure, the Constitution authorizes sanctions other than removal and suspension, providing that a judge may be "removed, suspended, or *otherwise disciplined*" for judicial misconduct. Ga. Const. of 1983, Art. VI, Sec. VII, Par. VII (a) (emphasis supplied). It is easy to read "removed, suspended, or otherwise disciplined" to authorize sanctions that are equivalent to removal or suspension, as well as sanctions that are less harsh. But a lifetime disqualification from judicial office strikes me as a *greater* sanction than removal or suspension from a presently held office. And it is problematic for several reasons to read "removed, suspended, or otherwise

disciplined" to authorize sanctions that are greater than removal or suspension.

To begin, that is not how we typically read constitutional text. Applying a canon of construction known as "ejusdem generis,"[6] when a provision of law includes a list composed of two or more specific terms that are followed by a more general term, we ordinarily understand the general term to be limited to the kind or class to which the preceding specific terms belong. See York v. RES-GA LJY, LLC, 300 Ga. 869, 872 (2) (799 SE2d 235) (2017). See also Warren v. State, 294 Ga. 589, 591 n.2 (755 SE2d 171) (2014); Center for a Sustainable Coast v. Coastal Marshlands Protection Committee, 284 Ga. 736, 737-738 (1) (670 SE2d 429) (2008). A corollary of this canon is the principle that the general term usually will not be understood to include matters of a greater or higher dignity, quality, or value than the specific terms. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 210 (2012).

---

[6] Latin for "of the same kind or class." Black's Law Dictionary 631 (10th ed. 2014).

14

An application of these principles to the constitutional provision for judges to be "removed, suspended, or otherwise disciplined" suggests that "otherwise disciplined" is most reasonably understood to be limited to sanctions no greater than removal or suspension.

Context matters, of course,[7] but I have found no other provision of the Constitution that suggests that "otherwise disciplined" ought to be understood more broadly. If anything, the Constitution as a whole suggests that sanctions greater than removal or suspension — and in particular, a disqualification from judicial office — are not within the provision for judges to be "otherwise disciplined." Several provisions of the Constitution authorize the removal from office of various public officials, but one — and only one — specifically and expressly authorizes the additional sanction of a disqualification from holding office. See Ga. Const. of 1983, Art. III, Sec. VII, Par. III ("In cases of impeachment, judgments shall not extend further than removal from office *and disqualification to hold and enjoy any office of honor, trust, or profit within this state. . . .*" (Emphasis supplied)).

---

[7] See <u>Elliott v. State</u>, 305 Ga. 179, 186-187 (II) (B) (824 SE2d 265) (2019).

Moreover, the Constitution enumerates the essential qualifications for various judicial offices and then provides expressly that the power to fix additional qualifications is vested in the General Assembly.[8] See Ga. Const. of 1983, Art. VI, Sec. VII, Par. II (e). These provisions suggest that it is for the General Assembly — not this Court or the Commission — to determine by impeachment or the fixing of qualifications for judicial office whether and to what extent judicial misconduct ought to disqualify a judge from holding judicial office in the future.

Although this Court in several cases has imposed a lifetime disqualification from judicial office as a sanction for judicial misconduct,[9] I find no case in which we have considered or decided

---

[8] In an exercise of its constitutional power to fix additional qualifications for judicial office, the General Assembly enacted OCGA § 15-1-13, subsection (a) of which provides that "if a person has been removed from any judicial office upon order of the Supreme Court after review, that person shall not be eligible to be elected or appointed to any judicial office in this state until seven years have elapsed from the time of such removal."

[9] See, e.g., Inquiry Concerning Judge Peters, 289 Ga. 633 (715 SE2d 56) (2011); Inquiry Concerning Judge Fowler, 287 Ga. 467 (696 SE2d 644) (2010); In re Judge Beall, 274 Ga. 27 (552 SE2d 798) (2001); Inquiry Concerning a Judge No. 98-60, 270 Ga. 1 (508 SE2d 383) (1998); Inquiry Concerning a Judge No. 92-80, 262 Ga. 804 (426 SE2d 552) (1993); In the Matter of: Inquiry Concerning a Judge No. 1496, 261 Ga. 537 (407 SE2d 743) (1991).

16

whether such a sanction is constitutionally authorized. And I find no case in which we imposed such a sanction until nearly a decade after the adoption of the Constitution of 1983. See, e.g., <u>Inquiry Concerning a Judge</u>, 261 Ga. 537 (407 SE2d 743) (1991). Consequently, I see no evidence of a preexisting or contemporaneous practice to suggest that the provision for judges to be "removed, suspended, or otherwise disciplined" — a provision that has remained unchanged since 1983 — was understood at the time of its adoption to authorize the imposition of sanctions greater than removal or suspension. Indeed, the only evidence I have found of a contemporaneous understanding of "removed, suspended, or otherwise disciplined" is commentary prepared in 1980 by the Committee to Revise Article VI, and this commentary cuts squarely against an expansive interpretation of "otherwise disciplined." With respect to the provision proposed by the Committee and authorizing judges to be "removed, suspended, or otherwise disciplined" for judicial misconduct, the Committee explained that "[t]he types of discipline, and the bases for discipline, are described in the

17

Constitution so as to carefully circumscribe the power of the [Judicial Qualifications] Commission."[10]

For these reasons, I have some doubt that this Court is constitutionally authorized to impose a lifetime disqualification from judicial office as discipline for judicial misconduct.[11] Consistent with that doubt, I concur fully in the decision to dismiss the case against Judge Crawford.

I am authorized to state that Justices Boggs, Peterson, and Bethel join this concurring opinion.

---

[10] See Select Committee on Constitutional Revision, 1977-1981, Legislative Overview Committee, Vol. III, Materials Considered at Meeting of August 7, 1981, Commentary of Committee to Revise Article VI at 9.

[11] I also note that, if the "removed, suspended, or otherwise disciplined" provision were understood to authorize sanctions greater than removal or suspension, I see no limiting principle by which to confine the greater sanctions to disqualification from judicial office. The absence of a cognizable limiting principle suggests that the provision ought not to be understood so broadly. Judicial discipline is meant to promote public confidence in the integrity and competence of the judiciary, but an unbounded power of judicial discipline would pose a grave threat to the equally important principle of judicial independence. Cf. In re Judicial Qualifications Comm. Formal Advisory Op. No. 239, 300 Ga. at 302 (3) (b).

Decided November 16, 2020.

Judicial misconduct.

*Charles P. Boring*, for Judicial Qualifications Commission.

*The Barnes Law Group, Roy E. Barnes, John R. Bartholomew IV; Virgil L. Brown*, for Judge Crawford.

*The Weathington Firm, James G. Banks*, amicus curiae.