NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 16, 2023

S22Z0858.  INQUIRY CONCERNING JUDGE GERALD JOHNSON.

PER CURIAM.

This judicial discipline matter is before the Court on the Report and Recommendation of the Hearing Panel of the Judicial Qualifications Commission ("JQC") and timely filed Notices of Exceptions filed by the Director of the JQC and respondent Gerald Johnson. The Hearing Panel recommended that Johnson be removed from office for violating Rules 1.1, 1.2 (A), and 1.2 (B) of the Georgia Code of Judicial Conduct ("CJC"). Johnson, however, submitted his resignation to Governor Kemp shortly after the Hearing Panel filed its Report and Recommendation. Removal from office is the only sanction the JQC seeks, and we cannot remove a former judge from an office he no longer holds. Accordingly, we

dismiss.

According to the formal charges, which Johnson admits are true and correct, on the evening of October 18, 2021, the Habersham County Sheriff's Office received a call regarding multiple gunshots fired in the residential area where Johnson lived. Travis Jarrell, the Habersham County Sheriff's Office lieutenant who responded to the call, knew Johnson and knew that Johnson lived in the area, so he went to Johnson's house to ask Johnson whether he had any information about the gunshots. After Jarrell rang Johnson's doorbell, Johnson opened the door and pointed a loaded AR-15 rifle at Jarrell. Jarrell, who feared for his safety, fled to his patrol vehicle, and Johnson dropped the rifle. Johnson then spoke with Jarrell but told Jarrell he did not want their conversation to be recorded. As Johnson and Jarrell spoke, Johnson called Jarrell by his first name and several times asked Jarrell to turn off his recording device. Each time, Jarrell informed Johnson he could not turn off the recording device. Johnson, who was angry, visibly intoxicated, unstable on his feet, and spoke with slurred speech, admitted to Jarrell that he had

fired an AR-15 rifle from his porch that evening while intoxicated.

Eight days after the incident, Johnson told the JQC Chief Investigator that the day of the incident was a "blur" because he had been drinking excessively, but he remembered sitting in his chair and hearing his wife's "chatter," which aggravated him and caused him to "snap." Johnson admitted he then went to the porch and fired multiple rounds from the rifle into the ground, and when Jarrell came to his house in a marked patrol vehicle, he answered the door with the loaded rifle pointed at Jarrell's head.

On October 28, 2021, the Investigative Panel filed a consent motion suspending Johnson pending a final determination of the JQC's investigation. Johnson was suspended with pay by order of this Court on October 29, 2021. On March 31, 2022, the Director filed a four-count formal complaint against Johnson. Count 1 alleged Johnson, in violation of Rule 1.2 (A), "failed to act in a manner that promotes public confidence in the integrity of the judiciary." Count 2 charged Johnson with a violation of Rule 1.2 (B) by failing "to establish, maintain, and enforce high standards of conduct and

personally observe such standards of conduct so the integrity of the judiciary might be preserved[.]" Count 4 charged Johnson with failing to respect and comply with the law in violation of Rule 1.1[1]

A formal hearing on the charges against Johnson was held on November 16, 2022. On January 6, 2023, the Hearing Panel submitted to this Court its Report and Recommendation in which it concluded that the Director had proved Counts 1, 2, and 4 by clear and convincing evidence. Although the Hearing Panel acknowledged in its Report that all proven misconduct attributed to Johnson was personal in that it did not occur when Johnson was exercising his official responsibilities, it concluded that Johnson had "brought the judicial office into disrepute with his actions," and "restoring Johnson to the bench would not 'respect and honor the judicial office

---

[1] Count 3 of the Formal Complaint charged Johnson with violation of Rule 1.3 of the CJC by lending the prestige of his office to advance his own private interests by requesting that a law enforcement officer turn off his recording device. Rule 1.3 provides: "Judges shall not lend the prestige of their office to advance the private interests of the judge or others." Count 3 was dismissed by the Director prior to the hearing and was not considered by the Hearing Panel.

as a public trust,' nor would it 'enhance and maintain confidence in our legal system.'" The Hearing Panel thus issued its recommendation that Johnson be removed from his position as Chief Judge of the Magistrate Court of Habersham County. Five days later, Johnson submitted, and Governor Brian Kemp subsequently accepted, his letter of resignation.

The matter is now before this Court, where Johnson asserts that the Hearing Panel made several errors in its findings and conclusions, and the Director argues that Johnson should be "removed" from office pursuant to this Court's authority under Article VI, Section VII, Paragraph VII (a) of the Georgia Constitution of 1983 to discipline judges.[2] It is unnecessary to

---

[2] One argument raised by the Director is that although Article VI, Section VII, Paragraph VII (a) of the Georgia Constitution of 1983, the provision that authorizes us to discipline judges, provides that a "*judge* may be removed, suspended, or otherwise disciplined for willful misconduct" (emphasis supplied), we have authority to discipline Johnson, who is now a former judge, because JQC Rule 2 (B) (2) grants us "continuing jurisdiction over former judges." We need not, and do not, address this argument here because the Director's request that Johnson be removed from office was rendered moot by Johnson's resignation. See generally *Inquiry Concerning Judge Coomer*, 315 Ga. 841, 850 (885 SE2d 738) (2023) ("The [CJC] repeatedly

address the arguments of either party, however, because once Johnson's resignation was accepted by the Governor, the Director's request that this Court remove Johnson from office[3] became moot.[4] See OCGA § 5-6-48 (b) (3) (An appeal shall be dismissed "[w]here the

---

makes clear that it governs the conduct of only judges and 'judicial candidates[.]'"); *Inquiry Concerning Judge Crawford*, 310 Ga. 403, 405 (851 SE2d 572) (2020) (concluding it was unnecessary to determine whether the evidence was sufficient to support the Hearing Panel's conclusions because the judge resigned from office after the Hearing Panel issued its Report and Recommendation).

[3] The Director's request that Johnson be "removed," even though he no longer holds a judicial position, appears to derive from the Director's interest in preventing Johnson from seeking appointment or election to another judicial position for at least seven years, as well as the Director's assertion that the timing of Johnson's resignation allows Johnson to "circumvent the judicial disciplinary process." See OCGA § 15-1-13 (a) ("[I]f a person has been removed from any judicial office upon order of the Supreme Court after review, that person shall not be eligible to be elected or appointed to any judicial office in this state until seven years have elapsed from the time of such removal.").

[4] The attorney discipline process is notably different in this regard. In bar discipline matters, lawyers who are the subject of pending disciplinary proceedings generally cannot resign from membership in the bar without the approval of this Court. See Bar Rule 1-208 (d) ("No petition for leave to resign shall be accepted if there are disciplinary proceedings or criminal charges pending against the member, or if the member is not in good standing for failure to pay child support obligations[.]"). We are able to impose this rule in attorney discipline matters because we have exclusive authority to supervise and regulate the practice of law. By contrast, we have no control over the circumstances in which public officers, including judges, vacate their office. That process is controlled by the General Assembly through statute. See generally OCGA § 45-5-1 et seq., especially § 45-5-1 (a) (2) ("All offices in the state shall be vacated . . . [b]y resignation, when accepted").

6

questions presented have become moot."); *Scarbrough Group v. Worley*, 290 Ga. 234, 236 (719 SE2d 430) (2011) ("A case is moot when its resolution would amount to the determination of an abstract question not arising upon existing facts or rights.") (citations, punctuation, and emphasis omitted). This matter is, therefore, dismissed.[5]

*Dismissed. All the Justices concur, except Colvin, J., not participating.*

---

[5] Our dismissal is without prejudice to the JQC reinstating charges against Johnson in the event he becomes a judge or judicial candidate in the future. This Court is not aware of any applicable statute of limitation or doctrine of estoppel that would prevent the JQC from revisiting any of the misconduct alleged in Counts 1, 2, or 4 of the Formal Complaint should Johnson again become a judge or judicial candidate because there has not been a final disposition of those charges on the merits.